J-S47024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DONALD GRIFFITH, | |
| Appellant | No. 2768 EDA 2013 |

Appeal from the Judgment of Sentence of April 19, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004784-2011

BEFORE:  MUNDY, OLSON AND WECHT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 06, 2014**

Appellant, Donald Griffith, appeals from the judgment of sentence entered on April 19, 2013, following his jury trial convictions for first-degree murder, possession of an instrument of crime (PIC), and carrying a firearm without a license.[1]  Upon consideration, we affirm.

The trial court summarized the facts of this case as follows:

> On January 14, 2011 Officers [Michael] McDonough and [William] McCrane were flagged down by [] Jamil Ransome at the intersection of Devereaux and Frankford Avenues following an apparent traffic accident [with Appellant]. [Ransome] and his friend Andrew Taylor, travelling in a white Chevy Malibu, and [Appellant], driving a light blue Oldsmobile station wagon, collided when [Appellant] made an illegal left turn.  Although everyone involved was upset by the accident, Officers McDonough and McCrane, en route

---

[1]  18 Pa.C.S.A. §§ 2502(a), 907(a), and 6106(a)(1), respectively.

to another accident, instructed the parties to calm down before leaving the area. After the accident, an obviously agitated [Ransome] called his mother. After a short conversation, Ms. Ransome heard the "pop" of gunfire, and called out to her son. As she held the line, she heard a number of additional shots and screams but [Ransome] never returned to the line.

Arriving home from work at approximately the same time, Ana Sousa observed [Appellant] and [Ransome] speaking to police officers as she parked her car. As she retrieved a marker from a snow covered parking space, she watched as [Appellant] and [Ransome] spoke to police officers before the officers left the area. After the officers left, the two men continued to loudly argue with one another. Just a few seconds later, as she emerged from her vehicle, Ms. Sousa heard gunshots coming from the area where [Appellant] and [Ransome] stood. Ms. Sousa watched as [Ransome] attempted to run away, and stood, frozen in terror, as [Appellant] continued to fire his weapon as he pursued [Ransome].

Kimberly Tadlock, driving home from work, stopped at the traffic light at the intersection of Devereaux and Frankford Avenues. Ms. Tadlock observed an argument between [Appellant] and [Ransome] in the street just ahead of where her vehicle was stopped. Describing [Ransome] as a younger and thinner man than [Appellant], Ms. Tadlock watched as [Appellant] berated [Ransome] and angrily pointed in his face. [Appellant] then reached into his pocket and [Ransome] immediately began to run away. [Ransome] slipped on ice and fell as he tried to run away, and [Appellant] fired his weapon twice in [Ransome's] direction. After his fall, [Ransome] jumped up and continued to run away and [Appellant] followed, firing his weapon four (4) additional times. [Appellant] fired his weapon at [Ransome] as the victim attempted to flee, and also fired at the white vehicle in which [Ransome] had been riding. [Appellant] then returned to his older model Oldsmobile station wagon and fled the scene without activating his headlights.

After the shooting, Ms. Tadlock saw a marked police car proceeding down Frankford Avenue and [she] flagged down

- 2 -

the officer. As she pulled her vehicle forward to get the officer's attention, she saw [Ransome] lying on the ground. Ms. Tadlock stated that as [Appellant] pursued and fired at [Ransome] she was able to see [Appellant's] face. Driving alone in a marked police car on Harbison Avenue headed toward Frankford Avenue, Officer [Sharon] Pawlowski heard approximately [three to four] gunshots in the area. After hearing the shots, Office[r] Pawlowski was flagged down by a visibly shaken Kimberly Tadlock who described the shooting she had just witnessed. Officers McDonough and McCrane then heard a radio call of a shooting in the area. Returning immediately to the scene, the officers observed [Ransome's] unresponsive body halfway in the backseat of the white vehicle shared with Mr. Taylor. [Ransome] was immediately taken to Temple University Hospital and was pronounced dead from a single gunshot wound to his abdomen shortly thereafter.

Responding to a radio call of a blue Oldsmobile wanted in connection with a homicide, Sergeant [James] Wagner proceeded toward the 6200 block of Jackson Street. When he arrived in the area, he observed [Appellant] at the corner of Devereaux and Gillespie Streets as [Appellant] flattened his body against a wall to avoid detection by the passing police vehicle. Although [Appellant] avoided detection by the passing officer, Sergeant Wagner approached from the opposite direction and detained [Appellant]. After giving a statement to officers on the scene, Ms. Tadlock was transported a short distance away to where [Appellant] was being detained. At the time of the identification, Ms. Tadlock stated that she recognized [Appellant] as the shooter, but that he had swapped his leather and fur coat for a black and grey checkered coat and black hat. [Appellant's] blue Oldsmobile station wagon was recovered less than a mile from the scene of the shooting. Following this identification, [Appellant] was arrested without incident.

Crime Scene Investigator [Gregory] Yatcilla arrived at the scene along with Officers Flade, Davis, and Richardson[2] at approximately 9:59 p.m. While at the scene, Officer Yatcilla recovered eight (8) fired cartridge casings. Four (4) were recovered from behind a truck parked on Devereaux Avenue, and four (4) were recovered from the center of the street on Frankford Avenue. A search warrant was executed on [Appellant's] home in the early morning hours of January 25, 2011. Inside [Appellant's] home, officers recovered a loaded Glock 9 mm semi-automatic handgun, an empty magazine for the same weapon, a black leather coat with a tan fur collar and trim, a brown cap and a striped sweater. The weapon recovered from [Appellant's] home had gunshot residue in the chamber, indicating that it was recently fired. Likewise, ballistics evidence proved that the fired cartridge casings recovered from the scene of the shooting came from [Appellant's] weapon. [Ransome] was killed by a single gunshot which entered his abdomen and pierced his small intestine and aorta before lodging in his spinal column. Further, the weapon matched the caliber and class of the bullet recovered from [Ransome's] lower back.

Trial Court Opinion, 1/17/2014, at 1-5 (record citations omitted).

Procedurally, the case progressed as follows:

[Appellant] was tried by a jury commencing on April 15, 2013. On April 19, 2013, the jury found [Appellant] guilty of [the aforementioned charges]. On that same day, [Appellant] was sentenced to life imprisonment at a state correctional facility without the possibility of parole. [Appellant] filed a post-trial motion on April 23, 2013 which was denied by [the trial court] on September 13, 2013. [Appellant] filed a notice of appeal on September 23, 2013, and was ordered to file a statement of [errors] complained of on appeal on September 24, 2013. Said statement was filed on October 15, 2013. [The trial court issued an

_____

[2] These officers' first names do not appear in the certified record and they were not witnesses at trial.

- 4 -

opinion pursuant to Pa.R.A.P. 1925(a) on January 17, 2014.]

*Id.* at 1 (superfluous capitalization omitted).

On appeal, Appellant presents the following issues[3] for our review:

I.      Is [Appellant] entitled to a new trial as a result of the trial court's ruling that precluded him from presenting the testimony of Police Officer Murphy concerning statements Andrew Taylor had made to him concerning the shooting incident?

II.     Is [Appellant] entitled to a new trial as the result of the trial court's ruling denying his motion to preclude the Commonwealth from impeaching [Appellant's] testimony with his prior conviction for theft by receiving stolen property?

III.    Is [Appellant] entitled to an arrest of judgment with respect to his convictions for murder of the first degree, a violation of the Uniform Firearms Act and possessing instruments of crime since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving [Appellant's] guilt beyond a reasonable doubt?

IV.     Is [Appellant] entitled to a new trial with respect to his convictions for murder of the first degree, a violation of the Uniform Firearms Act and possessing instruments of crime since the verdicts of guilt are against the weight of the evidence?

Appellant's Brief at 5.

Appellant's first two issues implicate the trial court's evidentiary rulings:

_____

[3]  We have reordered the issues for ease of discussion.

> On a challenge to a trial court's evidentiary ruling, our standard of review is one of deference.
>
> The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Hernandez*, 39 A.3d 406, 411 (Pa. Super. 2012) (citation omitted).

In the first issue, Appellant claims he is entitled to a new trial because the trial court "precluded him from presenting the testimony of Police Officer Murphy concerning statements Andrew Taylor made to him concerning the shooting incident." Appellant's Brief at 37. As mentioned, Taylor was a passenger in the Ransome's car at the time of the vehicular accident. More specifically, Appellant asserts:

> At the scene of the crime a struggle ensued forcing Officer Murphy to place Taylor in the back of his police vehicle. While so confined, Taylor told Officer Murphy that […A]ppellant attempted to walk away from the incident, but that he and the victim confronted him. The trial court, however, ruled these statements inadmissible.

*Id.* Appellant avers that Taylor's statements are not hearsay because they were not offered for the truth of the matter asserted or are admissible under the state of mind, declarations against penal interest, excited utterance, and/or present sense impression exceptions to the hearsay rule pursuant to Pa.R.E. 803(3), 804(b)(3), 803(2), and 803(1), respectively. *Id.* at 38-39.

In the alternative, Appellant argues that constitutional due process of law requires the admission of the statements at issue. *Id.* at 40-45.

Initially upon review, Appellant did not raise various aspects of his current claim before the trial court and we are constrained to find those contentions waived. First, we note that, at trial, Appellant did not argue that the present sense impression exception to the hearsay rule was applicable. *See* N.T., 4/17/2013, at 65-69, 75-77. "[T]his Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court." *Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008); *see also* Pa.R.A.P. 302(a)("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Likewise, Appellant presented his constitutional due process challenge for the first time on appeal and we are constrained to find it waived. "An appellate court should not address constitutional issues unnecessarily or when they are not properly presented and preserved in the trial court for our appellate review." *Commonwealth v. Berryman*, 649 A.2d 961, 973 (Pa. 1994) (citations omitted). "The Pennsylvania Supreme Court has clearly held that constitutional issues […] are waived if not properly raised in the trial court." *Id.*; *see also* Pa.R.A.P. 302(a). For all of the foregoing reasons, Appellant has waived these two aspects of his claim.

Turning now to the substance of the remainder of Appellant's first evidentiary issue, at trial both Appellant and the Commonwealth

acknowledged that Andrew Taylor was an available witness. N.T., 4/17/2013, at 65-69, 75-78. Appellant submitted the following proffer:

> Officer Murphy, Badge 5222, was on patrol and arrived at the scene of this shooting at Frankford and Devereaux Avenue; the decedent had been taken away by the patrol wagon.
>
> On his arrival he saw other officers trying to control the black male who we know is Andrew Taylor.
>
> Mr. Taylor, during the course of this struggle, was placed in the back of Officer Murphy's vehicle and stated to Officer Murphy that the male, referring to [Appellant], tried to walk away and [Taylor] and [the victim] tried to confront him.
>
> He stated the male pulled out a gun and shot about eight times. The witness[, Mr. Taylor,] stated that he ran when he heard the gunshots.
>
> Judge, we seek to introduce that statement through Officer Murphy. Although it is hearsay, we would argue to the [c]ourt that it is – not being introduced for the truth of the matter asserted but to show the state of mind of the declarant.

*Id.* at 65-66.

Later, Appellant renewed his argument "on the basis of [the proffered statement] being a state of mind exception or an excited utterance despite the lapse of time." *Id.* at 75. He further contended "it is a declaration against interest of both Mr. Taylor and the decedent, the statement that they were going to confront [Appellant]." *Id.* at 76. After argument on the

issue, Appellant informed the trial court that he would not call Mr. Taylor as a witness.[4] *Id.* at 78.

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.'" **Commonwealth v. Gray**, 867 A.2d 560, 570 (Pa. Super. 2005), *citing* Pa.R.E. 801(c). "Hearsay testimony is *per se* inadmissible in this Commonwealth, except as provided in the Pennsylvania Rules of Evidence[,] by other rules prescribed by the Pennsylvania Supreme Court, or by statute." *Id.*

Appellant has implicated the following hearsay exceptions:

> **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused.
>
> *Comment:* This rule is identical to F.R.E. 803(2).
>
> This exception has a more narrow base than the exception for a present sense impression, because it requires an event or condition that is *startling*. However, it is broader in scope because an excited utterance (1) need not describe or explain the startling event or condition; it need only *relate* to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

---

[4] The record confirms that defense counsel intentionally refused to call Taylor as a witness. **See** N.T., 4/17/2013, at 78 ("After considering the upside and downside, [Appellant and defense counsel] were in agreement that [they] would not call [Taylor]."

There is no set time interval following a startling event or condition after which an utterance relating to it will be ineligible for exception to the hearsay rule as an excited utterance. In **Commonwealth v. Gore**, 396 A.2d 1302, 1305 (Pa. Super. 1978), the court explained:

The declaration need not be strictly contemporaneous with the existing cause, nor is there a definite and fixed time limit ... Rather, each case must be judged on its own facts, and a lapse of time of several hours has not negated the characterization of a statement as an "excited utterance." ... The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance.

**(3) Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

*Comment*: This rule is identical to F.R.E. 803(3).

Pa.R.E. 803(2), (3).

Moreover, Appellant relies upon the following additional hearsay exception:

(3) **Statement Against Interest.** A statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.
>
> *Comment:* This rule is identical to F.R.E. 804(b)(3).

Pa.R.E. 804(3).

Here, the trial court determined:

> According to [Appellant], Taylor made a statement in which he indicated that he and decedent confronted [Appellant] when he attempted to walk away after the incident, and following said confrontation, [Appellant] began firing his weapon. At the outset, it must be noted that [Appellant] has fundamentally failed to demonstrate how this testimony was relevant to [Appellant's] position, as Taylor purportedly told the officers that he and decedent were verbally confronted by [Appellant] and [Appellant] opened fire in response. However, after argument on the record regarding this issue, [Appellant] was given full opportunity to call Taylor, an available witness, to the stand for the purpose of eliciting this statement to police. [Appellant] made the tactical decision not to do so, and instead renewed his request to allow said statement from Police Officer Murphy, requiring dissection of several layers of hearsay, when Taylor was an available witness at trial. Although within the purview of trial strategy, neither Andrew Taylor nor Officer Murphy were called to testify at trial, either in the Commonwealth's case-in-chief, or in [Appellant's] presentation of evidence. [Appellant's] decision not to call Andrew Taylor for the purpose of eliciting his statement to police is fatal to this claim.

Trial Court Opinion, 1/17/2014, at 14-15 (record citations omitted).

Upon review, we decline to disturb the trial court's ruling. Taylor's alleged statement did not come within either the state of mind or statement against interest exceptions to the hearsay rule. The proffered statement

was based upon Taylor's memories or beliefs and not related to motive, intent, or plan. Taylor would not have been subject to criminal or civil prosecution after making the alleged statement.

Of Appellant's claimed hearsay exceptions, the excited utterance exception was most apt. The statement was made after the shooting and while Taylor was visibly upset. Nonetheless, Appellant proffered Taylor's purported hearsay statement to police to show that Ransome verbally confronted Appellant. However, there was no dispute that the parties argued before Appellant commenced firing upon Ransome. At trial, as discussed in detail **infra**, Kimberly Tadlock Green and Ana Sousa testified as such. **See** N.T., 4/16/2013, at 80-85, 127-128, 136. Thus, the proffered evidence was merely duplicative of other testimony. We discern no abuse of discretion in precluding Taylor's alleged statement via one of the investigating officers.

Furthermore, such evidence, even if it qualified as an excited utterance exception to the rule against hearsay, is irrelevant to Appellant's self-defense claim because, as discussed at length **_infra_**, two eyewitnesses testified that while Appellant and the victim were engaged in a verbal altercation, Appellant reached for a firearm, advanced on the unarmed victim, and shot at him multiple times. Thus, any error in not admitting the proffered testimony is harmless. **_See Commonwealth v. Stetler_**, 95 A.3d 864, 890 (Pa. Super. 2014) ("An error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of

the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.").

In the second issue for our review, Appellant argues that the trial court erred by denying his motion *in limine* to preclude Appellant's prior *crimen falsi* conviction for theft by receiving stolen property. Appellant's Brief at 46. He avers that the conviction was over 10 years old at the time of trial and, therefore, the trial court abused its discretion under Pa.R.E. 609(b). *Id.* at 46. Appellant contends that evidence of the prior crime cast doubt on his credibility, so he was forced to take the stand in his own defense. *Id.* at 47. He further claims that merely because his prior conviction was elicited on direct examination, the trial court's ruling was not harmless. *Id.*

As previously cited, we examine the trial court's evidentiary rulings for an abuse of discretion. *Hernandez*, 39 A.3d at 411. Relevant herein, Pa.R.E. 609 provides:

> **(a) In General.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement.
>
> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> > (1) its probative value substantially outweighs its prejudicial effect; and

- 13 -

> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Pa.R.E. 609.

Initially, as noted by the trial court, 10 years had not elapsed between Appellant's guilty plea to receiving stolen property and the instant crime. More specifically, the trial court determined that Appellant's prior receiving stolen property conviction resulted from a guilty plea in December 2002 and the shooting occurred in January 2011, less than 10 years apart. Trial Court Opinion, 1/17/2014, at 16. This Court has previously recognized that the time devoted to trying the case "artificially increase[s]" the timing mandates under Rule 609. *Commonwealth v. Harris*, 884 A.2d 920, 926 (Pa. Super. 2005) ("[T]he ten-year period dating from [Harris'] release from prison on his prior *crimen falsi* had not expired when he committed the instant murder on March 24, 2001."). Because less than 10 years had elapsed, admission of *crimen falsi* evidence was mandatory under Pa.R.E. 609.

Moreover, in determining whether to admit evidence of a prior *crimen falsi* conviction, the trial court should consider the following factors:

> 1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared

with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. Palo*, 2011 PA Super 136, 24 A.3d 1050, 1056 (Pa. Super. 2011).

Here, the trial court further weighed the abovementioned factors, concluding the case "turned on the credibility of the witnesses at trial" and, in light of Appellant's self-defense claim, there were "no adequate alternative grounds for impeachment[,]" and there was "limited prejudice[.]" *Id.*

Based upon our standard of review, we discern no abuse of discretion. The trial court carefully weighed the probative value of Appellant's prior receiving stolen property conviction against its prejudicial value. The record supports the trial court's decision to allow the evidence, pursuant to factors four and five above, because Appellant asserted self-defense and, thus, the case turned on credibility. Moreover, under factors one and two above, Appellant's prior conviction does not suggest a propensity to commit murder, the charge for which he was currently being tried. Accordingly, we find no merit to Appellant's second issue.

In his third issue presented, Appellant claims that the evidence was insufficient to support his convictions for PIC[5] and first-degree murder. With regard to his murder conviction, Appellant argues:

> [T]he evidence is insufficient to sustain the verdict of guilt since the Commonwealth failed to prove [Appellant's] guilt beyond a reasonable doubt. The Commonwealth failed to rebut [...A]ppellant's claim of self-defense. [...A]ppellant reasonably believed that deadly force was necessary to protect himself against death or serious bodily injury. [...A]ppellant's actions were reasonable under the circumstances, [...A]ppellant was not the aggressor, [...A]ppellant did not provoke the use of force and [...A]ppellant did not violate any duty to retreat.
>
> Additionally, the evidence did not sustain the conviction for first degree murder since [...A]ppellant did not have the specific intent to kill and did not act with malice, premeditation or ill will as required by 18 Pa.C.S.A. § 2502(a). At most, [...A]ppellant was guilty of third-degree

_____

[5] This Court has reiterated that when challenging the sufficiency of the evidence on appeal, Appellant's Pa.R.A.P. 1925(b) statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (internal citations omitted). "Such specificity is of particular importance in cases where, as here, [] Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Id.** In his 1925(b) statement *sub judice*, Appellant fails to specify which element of PIC the Commonwealth failed to prove. Hence, we are constrained to find this aspect of his claim waived. Moreover, Appellant has not presented any legal argument pertaining to his PIC conviction on appeal and has waived his claim for this additional reason. **See Commonwealth v. Rahman**, 75 A.3d 497, 504 (Pa. Super. 2013) ("Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

murder since he did not intend to kill the victim or unreasonable belief voluntary manslaughter since he acted in mistaken self-defense.

* * *

In the instant matter, […A]ppellant had to take steps to protect himself from the danger of death or serious bodily injury at the hands of the victim and Andrew Taylor in the incident during which the victim was shot. The victim and Taylor were ready to kill […A]ppellant following a motor vehicle accident. This is a clear case of "road rage," in which the victim and Taylor sought revenge for […A]ppellant's allegedly causing the motor vehicle accident. Both the victim and Taylor were "agitated" following the accident and had to be calmed down by police officers who happened upon the scene of the accident.

[…A]ppellant reasonably believed that he was in danger of death or great bodily injury at the time of the shooting. […A]ppellant faced the danger of death or serious bodily injury and had to take immediate action. He was left with no choice other than to shoot the victim since he was under attack from the victim and Taylor. He may not be faulted for so doing since his actions were reasonable under the circumstances presented to him.

[…A]ppellant acted reasonably under the circumstances. He was not the initial aggressor. The victim and Taylor were the initial aggressors. There was no safe avenue of retreat for […A]ppellant. The incident occurred on an icy highway where movements of the parties were hampered by weather conditions. He could have been pursued by the victim and Taylor.

At most, […A]ppellant was guilty of either third degree murder or mistaken belief voluntary manslaughter.

Appellant's Brief at 19, 25-26.

Our Supreme Court has set forth the standard of review and relevant legal principles as follows:

- 17 -

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the Commonwealth as the verdict winner to determine if the evidence and all reasonable inferences derived therefrom are sufficient to establish all elements of the offense beyond a reasonable doubt. To sustain a conviction for murder of the first-degree, the Commonwealth must prove that: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. 18 Pa.C.S. § 2502(d). Specific intent may be inferred from the use of a deadly weapon on a vital part of the victim's body. Also, we are cognizant that the period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact the design to kill can be formulated in a fraction of a second. Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death. Further, the trier of fact, in passing upon the credibility of the witnesses, is free to believe all, part, or none of the evidence.

\*      \*      \*

When the defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving such a defense beyond a reasonable doubt. The Commonwealth cannot sustain its burden of proof solely on the factfinder's disbelief of the defendant's testimony. The disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact.

To elucidate the Commonwealth's specific burden in disproving Appellant's claim of self-defense, we look to Section 505 of our Crimes Code, 18 Pa.C.S.A. § 505. […] Section 505 states, in relevant part:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose

- 18 -

of protecting himself against the use of unlawful force by such other person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**—

\*          \*          \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating or by surrendering possession of a thing to a person asserting a claim of right thereto or by complying with a demand that he abstain from any action which he has no duty to take….

18 Pa.C.S.A § 505(a), (b)(2)(i), (ii).

***Commonwealth v. Rivera***, 983 A.2d 1211, 1220-1223 (Pa. 2009) (internal case citations, quotations, footnotes, and brackets omitted).

*Sub judice*, the trial court concluded there was sufficient evidence to refute Appellant's self-defense claim, opining:

Eyewitnesses Ana Desousa and Kimberly Tadlock each stated that she observed [Appellant] angrily point and yell in decedent's face before firing his weapon. Upon seeing [Appellant] reach into his pocket, decedent immediately ran away from [Appellant]. [Appellant] then pursued decedent, firing two (2) shots at decedent before he fell, then chasing him and firing an additional four (4) shots after decedent returned to his feet and continued to run away. Based upon the facts presented at trial, a jury could rationally conclude

- 19 -

that [Appellant] did not have a reasonable basis that he was in imminent danger of great bodily harm.

\*          \*          \*

Notably, despite his contentions at trial, [Appellant] never mentioned to police that decedent allegedly threatened his life.

\*          \*          \*

In this case, the evidence was more than sufficient to demonstrate that [Appellant] has specific intent to kill. […] It is undisputed that decedent's death was caused by a single gunshot wound which entered his abdomen. Likewise, there was sufficient evidence to prove that [Appellant] was the man who fired the fatal shot. In fact, [Appellant] did not deny firing the fatal gunshot, but instead attempted to explain his conduct[.] […] Here, it is clear that the jury chose to disbelieve [Appellant's] assertions, and determined that his actions illustrated his specific intent to kill.

Trial Court Opinion, 1/17/2014, at 9, 11-12.

Our review of the certified record confirms the trial court's assessment. Kimberly Tadlock Green testified that she saw the verbal altercation between Appellant and Ransome that ensued after police left the scene of the traffic accident. N.T., 4/16/2013, at 80-81. Tadlock Green testified that "it appeared to be a heated argument on [Appellant's] end" and that Appellant was "berating" the victim, pointing at his face. *Id.* at 82. She described Appellant's behavior as "upset and very demonstrative, flaying about with his hands." *Id.* Tadlock Green further testified that "[Appellant] reached into his pocket" and the victim "turned and ran directly towards" her truck. *Id.* at 83. Tadlock Green stated that Appellant was approximately five feet away from the victim when she heard two gunshots

and witnessed the victim slip on ice. *Id.* at 83-85. She described Appellant as "chasing" the victim. *Id.* at 100. Thereafter, Tadlock Green testified that she saw the victim get up and run and that she heard four more shots and then saw the victim lying in the street. *Id.* at 86-87, 111-113.

Ana Sousa testified that she did not personally witness the altercation, because a truck obscured her view. *Id.* at 127. She heard a loud argument followed by two gunshots. *Id.* at 127-128, 136. Sousa saw someone running down the street with a gun, but could not identify the person. *Id.* at 129. She then heard four more gunshots. *Id.* at 129-130.

Police recovered eight bullet casings from the scene of the crime. *Id.* at 30-31. The Commonwealth called firearm examiner, Police Officer Norman DeFields at trial. He testified that he examined eight cartridge casings recovered from the scene of the crime, as well as a bullet fragment recovered from the victim's spine, and confirmed that they were fired from a .9 millimeter Luger Glock firearm manufactured by Speer. N.T., 4/17/2013, at 31-33, 38. Officer William Ternwith testified that he recovered "a Glock 9-millimeter semiautomatic handgun, Model 19" from "under the bed mattress" from Appellant's residence, pursuant to a warrant and submitted it to the firearm identification unit. N.T., 4/16/2013, at 60. Officer DeFields testified that he tested the firearm recovered from Appellant's residence and it was operational. *Id.* at 35. Officer DeFields concluded that the eight recovered cartridge casings, and the bullet removed from the victim's spine, were fired from the same firearm that was submitted for forensic

examination. *Id.* at 42-43. The police did not recover a weapon from the victim, Andrew Taylor or the vehicle in which they were driving. N.T., 4/17/2013, at 19. Dr. Marlin Osborne, medical examiner, opined that the victim died of a single gunshot wound to the abdomen. *Id.* at 55.

Based on the foregoing, and based upon our standard of review, we conclude there was sufficient evidence to support Appellant's conviction for first-degree murder. Appellant used a firearm on a vital part of the victim's body that resulted in the victim's death. From this, we can infer a specific intent to kill. Moreover, the Commonwealth met its burden of disproving Appellant's self-defense claim beyond a reasonable doubt. Appellant was the initial aggressor. Appellant did not retreat and, as the evidence established, chased the victim. Appellant did not use only as much force as necessary for self-preservation. The victim was unarmed. No eyewitness saw anyone other than Appellant with a weapon during the incident. Appellant fired two shots at an unarmed victim who slipped on ice. The victim got up and ran, but Appellant continued pursuing the victim, firing additional shots. Viewing all of the evidence in the light most favorable to the Commonwealth, we conclude that that the trial court did not err in determining there was sufficient evidence to support Appellant's conviction. Accordingly, Appellant's third issue fails.

Finally, Appellant argues that his convictions were against the weight of the evidence. Appellant's Brief at 31-36. We review Appellant's claim under the following standard of review:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citation omitted).

Based upon our prior discussion of the evidence adduced at trial, we do not find that the trial court palpably abused its discretion in denying Appellant's weight claim. The jury's verdict was not so contrary to the evidence as to shock one's sense of judgment. Accordingly, Appellant's last claim lacks merit.

Judgment of sentence affirmed.

Judge Mundy joins this memorandum.

Judge Wecht concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/6/2014