**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Richard Jason PALO, Appellant.**

Superior Court of Pennsylvania.

Submitted March 14, 2010.
Filed July 1, 2011.

---

Dianne H. Zerega, Uniontown, for appellant.

Jack R. Heneks, Jr., Assistant District Attorney, Uniontown, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., LAZARUS and PLATT *, JJ.

OPINION BY STEVENS, P.J.:

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Fayette County after a jury convicted Appellant of burglary for his involvement in the after-hours burglary of local pharmacy. Appellant challenges the sufficiency of the evidence and the admission of an eighteen year old *crimen falsi* conviction to impeach an alibi witness. We affirm.

The trial court's Pa.R.A.P. 1925(a) opinion provides an apt factual and procedural history as follows:

> [At Appellant's criminal trial,] [t]he Commonwealth presented testimony to show that on April 4, 2009, Lizza's Apothecare Pharmacy, a retail pharmacy located in Uniontown, Fayette County, Pennsylvania, was burglarized by Palo and his uncle Scott Sullivan.[1]

---

[1] At Sullivan's guilty plea proceedings, which occurred after [Appellant's] trial, he denied that [Appellant] was involved in the burglary, and specifically named two other individuals as participants....

> The burglars broke into and entered the Pharmacy using the "drive-through" window, causing extensive damage to the window and frame. Lizza testified that it cost "around fifteen hundred dollars" to repair the window and frame. (N.T. 7/07/10 at 23). While inside, the burglars ransacked the shelves, and used black garbage bags to haul away selected items. Lizza determined with reasonable certainty that the controlled substances[ ] taken from his pharmacy

* Retired Senior Judge assigned to the Superior Court.

were fairly valued in an amount of $7,004.00. Lizza estimated that the non-controlled substances that were taken were in the approximate amount of $1,108.00 The day after the burglary, Lizza prepared a "theft report" for the Drug Enforcement Agency itemizing the loss of the controlled substances, which was marked as Exhibit 2 and admitted. Lizza reviewed the surveillance camera video, which showed the burglary. Lizza knew Sullivan as a person who had been in the pharmacy, and recognized him despite the mask he was wearing. On April 5, 2009, Officer Thomas Kolencik arrested Sullivan based on the identification made by Lizza. A search incident to arrest yielded pills and bulk pill bottles on Sullivan's person. At trial, Exhibit 3 was a list of the items found on Sullivan. The list includes: Exhibit 4, Lorazepam tablets, Exhibit 5, Hydrocodone tablets, and Exhibit 6, Lonox tablets. Exhibit 2 (the theft report that Lizza provided the Drug Enforcement Agency) was consistent with Exhibits 3, 4, 5, and 6. Sullivan ultimately plead guilty to the charges, but not until after the trial in this case.

[Appellant] was tied into the burglary as the result of the statements and testimony of his former girlfriend and the mother of his child, Charlotte Thorpe, (hereinafter "Thorpe"). She testified that she saw [Appellant] and Sullivan together on April 4, 2009, at around 4:30 p.m. Thorpe testified that "He (Palo) just pretty much came over and I was outside, and he was telling me that he wanted to rob a pharmacy, and I told him that there were other ways of earning money." N.T. at 28.

Later in the evening, after the burglary occurred, Thorpe testified that she saw [Appellant] again, at her mother's house. Thorpe testified that "Um, he came there (Thorpe's mother's house) and he told me to come out to the car and he showed me the pills, they were in black garbage bags." N.T. at 31. Sullivan again was in the car. Thorpe saw [Appellant] take a prescription bottle out of the black trash bag. Lastly, Thorpe testified that [Appellant] told her he burglarized the Apothecare Pharmacy. N.T. at 36.

[Appellant], as part of his defense, put on the stand Catherine Whetzel (hereinafter "Whetzel"), who was [Appellant's] girlfriend at the time of the burglary. Whetzel testified about threats that Thorpe made against Palo, specifically:

" . . . she did clearly say to me that if she couldn't have him, that no one else could, that she would do what she needed to do. She would call the cops and tell them that he has hit her to put him in jail, and if she needed to put him in jail, she would make up any lie that she needed to do to put him there." N.T. at 64.

[Appellant's] mother, Rosemary Frazee (hereinafter "Frazee") was called as an alibi witness. Specifically, Frazee testified that " . . . I get off 5:00 o'clock everyday, and by the time that I get home, it is somewhere between 5:30 and 6:00 o'clock, and I remember coming home because I stopped to put my cards out, and my son and his son were at the house . . ." N.T. at 75. Frazee further testified that she was with [Appellant] and his son from the time she got home until the time she left to go to bingo at 10 p.m. Lizza testified that on April 4, 2009, he was notified by his Pharmacy's alarm that there was activity at "9:00 o'clock, 9:30". N.T. at 21. Thus, the time frame that Frazee says she was with [Appellant] was the same time that the pharmacy was burglarized.

After Frazee testified, for purposes of impeaching Frazee's testimony, the Commonwealth offered evidence of Frazee's previous conviction[, in 1992,] for *crimen falsi* (crimes of falsehood). The defense objected because of the age of the conviction[ ]. After argument over the lunch recess, th[e trial court] ruled that the conviction[ ] could be presented as impeachment evidence pursuant to Pennsylvania Rules of Evidence (Pa. R.E.) 609(b). Thereafter, the Deputy Clerk of Courts for Fayette County testified "that on April 8. 1992, Rosemary Palo (Rosemary Frazee) pled guilty to criminal conspiracy to commit robbery, theft by unlawful taking and receiving stolen property." N.T. at 102.

[Appellant] was convicted of burglary, theft by unlawful taking, and criminal mischief on July 8, 2010. On July 15, 2010, th[e trial court] sentenced [Appellant] to not less than one year nor more than three years in a state correctional institution. On August 11, 2010, [Appellant], through his attorney Diana H. Zerega filed the Notice of Appeal currently at issue.

Trial Court's Pa.R.A.P. 1925(a) Opinion dated 12/2/10 at 2–5.

Appellant raises two issues for our review:

I. WAS THE EVIDENCE PRESENT[ED] INSUFFICIENT TO ESTABLISH THAT THE APPELLANT WAS GUILTY OF THE CRIMES CHARGED BEYOND A REASONABLE DOUBT, IN THAT THE COMMONWEALTH PRESENTED ONLY THE TESTIMONY OF A DISGRUNTLED FORMER GIRLFRIEND TO TESTIFY THAT THE APPELLANT WAS CONNECTED TO THIS CRIME?

II. DID THE TRIAL COURT ERR WHEN IT PERMITTED THE INTRODUCTION OF THE PRIOR CONVICTION OF A WITNESS, WHEN THAT CONVICTION WAS MORE THAN TEN YEARS OLD, THE COMMONWEALTH FAILED TO PROVIDE ANY PRIOR WRITTEN NOTICE THAT IT INTENDED TO USE THE PRIOR CONVICTION, AND THE USE OF THE CONVICTION OF THIS WITNESS WAS EXTREMELY PREJUDICIAL TO THE APPELLANT'S CASE?

Brief for Appellant at 10.

■■■■ Our standard of review for sufficiency of the evidence claims is well-established:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all

evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bruce,* 207 Pa.Super. 4, 916 A.2d 657, 661 (2007) (citations omitted).

The sum of Appellant's sufficiency argument is that evidence was insufficient because "the entire case of the Commonwealth rested on the sole testimony of his disgruntled former girlfriend who went to police to keep him away from their son when they had a custody dispute." Directed entirely to the credibility of the Commonwealth's chief witness, Appellant's claim challenges the weight, not the sufficiency, of the evidence. The record reveals, however, that Appellant failed his obligation to raise before the trial court a challenge to the weight of the evidence in either an oral or written motion for a new trial pursuant to Pa.R.Crim.P. 607.[1] Accordingly, he has waived this claim. *See Commonwealth v. Mack,* 850 A.2d 690 (Pa.Super.2004) (holding that, pursuant to Rule 607, a challenge to the weight of the evidence must be raised with the trial judge or it will be waived).

■ Even if Appellant had preserved his weight claim, he would gain no relief. The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 101 (1995). Ques-

tions concerning improper motive go to the credibility of the witnesses. *Commonwealth v. Boxley,* 575 Pa. 611, 838 A.2d 608, 612 (2003). An appellate court cannot substitute its judgment for that of the jury on issues of credibility. *Commonwealth v. DeJesus,* 580 Pa. 303, 311, 860 A.2d 102, 107 (2004).

In reaching its verdict, the jury obviously credited Charlotte Thorpe's testimony despite vigorous cross-examination designed to impeach her credibility. As we may not disturb the jury's credibility determinations in this regard, this claim, if preserved, would have failed.

■ Appellant's remaining challenge goes to the Commonwealth's use of an old *crimen falsi* conviction to impeach the testimony of alibi witness Rosemary Frazee, Appellant's mother. Specifically, the prosecution sought the admission of Frazee's prior conviction for conspiracy to commit retail theft, which is *crimen falsi, See Commonwealth v. Howard,* 823 A.2d 911, 913 n. 2 (Pa.Super.2003), to prove she lacked character for truthfulness. Appellant argues that the eighteen year old conviction was too remote in time to have had any relevance to mother's veracity and was, in any event, unduly prejudicial.

Impeachment evidence is evidence which is presented as a means of attacking the witness' credibility. Leonard Packel & Anne Poulin, *Pennsylvania Evidence* § 608 (1987). There are several principal ways to attack a witness' credibility: 'evidence offered to attack the character of a witness for truthfulness, evidence offered to attack the wit-

---

1. Pennsylvania Rule of Criminal Procedure 607 provides, in pertinent part, that:

 (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

 (1) orally, on the record, at any time before sentencing;

 (2) by written motion at any time before sentencing; or

 (3) in a post-sentence motion.

 Pa.R.Crim.P. 607(A).

ness' credibility by proving bias, interest, or corruption, evidence offered to prove defects in the witness' perception or recollection, and evidence offered to contradict the witness' testimony.'

*In Interest of M.M.*, 439 Pa.Super. 307, 317–318, 653 A.2d 1271, 1276 (Pa.Super.1995) (emphasis omitted). Pa.R.E. 609, which governs the admission of impeachment evidence, provides as follows:

**Rule 609. Impeachment by evidence of conviction of crime**

**(a) General rule.** For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement.

**(b) Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Pa.R.E. 609(a), (b). *See also Commonwealth v. Cascardo*, 981 A.2d 245, 254 (Pa.Super.2009).

In making this determination, the following factors should be considered:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. (Montez) Harris*, 884 A.2d 920, 925 (Pa.Super.2005) (*citing Commonwealth v. Randall*, 515 Pa. 410, 413, 528 A.2d 1326, 1328 (1987)).

In *Cascardo*, we applied the above factors to uphold a pretrial ruling permitting impeachment of the defendant with his sixteen year old *crimen falsi* convictions should he decide to testify at his murder trial. Factors one, two, three, and five all favored admission, we noted, because the evidence bore on veracity, was not "propensity" driven, involved crimes committed in defendant's adulthood, and lacked an adequate alternative for impeachment purposes. Of particular importance in our decision, however, was the fourth factor inquiry, as the Commonwealth's case, which alleged the conspiratorial murder of a creditor in defendant's loan sharking scheme, would turn on the credibility of a single witness who testified that he and the defendant had carried out the murder:

Cascardo is the only other person who could have testified about the murder. Cascardo presented an alibi witness intended to show he could not have killed Hoffner because he was not at the scene of the murder. Attacking Cascardo's

credibility was particularly important given his defense was totally contradictory to the Commonwealth's version of the facts.

*Id.* at 256.

We also adopted the trial court's reasoning as it pertained to balancing the probative value of the prior crimes evidence with their prejudicial effect:

Although both sides presented significant evidence during this [week-long] trial, only two people—Gerber and [Cascardo]—could provide direct evidence as to whether [Cascardo] solicited and/or participated in the murder of Hoffner. As such, the credibility of both Gerber and [Cascardo] was critical to any analysis by the jury. If the jury believed Gerber, they could convict [Cascardo]. If the jury believed [Cascardo], an acquittal would have to follow.

Because of the criticality of both Gerber's and [Cascardo]'s testimony, we concluded that the jury should hear as much as possible about each man's believability. One piece of information impacting upon the believability of [Cascardo] was his prior convictions involving dishonesty. We concluded at trial and still believe that the information regarding [Cascardo]'s prior record was probative of an extremely important issue-whether [Cascardo] should be believed by the jury. As such, evidence of [Cascardo]'s prior convictions had probative value within the context of the trial as it evolved. Trial Court Opinion, 7/8/08, at 21–22 (footnote omitted).

*Id.* at 256.

As in *Cascardo,* the Commonwealth's need to introduce evidence of Frazee's old *crimen falsi* conviction was high, for the jury would decide between the credibility of a single Commonwealth witness and that of a single defense witness in order to reach a verdict. Appellant's "disgruntled" ex-girlfriend Charlotte Thorpe, the mother of his child, testified to both Appellant's stated intent to burglarize the pharmacy and his joint possession of pills with Sullivan afterward. Contradicting Thorpe's account was Frazee, Appellant's mother, whose alibi testimony that Appellant could not have been the second burglar because he was at her house represented Appellant's chief defense. As the perceived credibility of these two witnesses with close personal ties to Appellant would likely determine the outcome of the case, we agree with the trial court that the probative value of Mother's prior *crimen falsi* conviction outweighed its prejudicial effect, permitting its admission at trial.

■ Appellant also advances a more technical Pa.R.E. 609(b) argument, namely, that the trial court erred in permitting the old *crimen falsi* conviction when the Commonwealth never provided Appellant "with advance written notice of its intent to use such evidence," thus depriving him of "a fair opportunity to contest the use of such evidence." The record shows that Appellant provided nearly five months' notice of his intent to use Frazee as an alibi witness, but the Commonwealth did not notify of its intent to impeach her until the day of her testimony, when it first learned that she had a prior record under a different surname.

■ In support of his argument, Appellant baldly argues that the Commonwealth's failure to provide notice was "prejudicial," without explaining exactly how he was prejudiced. Indeed, Appellant provides no authority to support his contention, nor does he discuss what, if any, unfair surprise occurred, how his use of Frazee's alibi testimony would have changed, if at all, or how emphasizing the age of the prior offense on redirect would not have provided him a fair opportunity

to respond. We may therefore find this claim waived for Appellant's failure to develop argument or cite to any legal authority in support of his position. Pa.R.A.P. 2119; *Commonwealth v. Selenski,* 18 A.3d 1229 (Pa.Super.2011) In the alternative, we find that Appellant cannot reasonably maintain that he lacked a fair opportunity to contest the use of such evidence in what was a fairly straightforward case, particularly where the record establishes that the trial court conducted an in-*camera* hearing in which defense counsel gave thorough argument as to why such evidence should be excluded. *See, e.g., U.S. v. Sloman,* 909 F.2d 176, 180 (C.A.6 (Ohio) 1990) (upholding use of stale conviction despite government's failure to give notice under identical F.R.E. 609 until after witness took stand; written notice not required because counsel was not unfairly surprised).

For the foregoing reasons, judgment of sentence is affirmed.