J-A01040-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIE LEE BROOKS | |
| Appellant | No. 1135 EDA 2012 |

Appeal from the Judgment of Sentence October 25, 2011
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000811-2009

BEFORE: LAZARUS, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.                    **FILED JULY 07, 2015**

This matter comes before us on remand from the Pennsylvania Supreme Court for consideration of Willie Lee Brooks' appellate claims that were not addressed by this Court in our decision to grant a new trial, a decision we made on the grounds that the trial judge erred in denying a continuance request made by Brooks on the day of trial in order to represent himself *pro se*. After careful review, we affirm the judgment of sentence imposed on Brooks by the Court of Common Pleas of Delaware County.

The trial court noted the relevant facts as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

On January 30, 2009, the Radnor Police charged [Brooks] with [a] shooting. After a preliminary hearing, [Brooks] was bound over for trial. This [c]ourt appointed an attorney to represent him. The pretrial conference was repeatedly continued, and a trial date [of] July 18, 2011 was continued until August 15, 2011.

On August 16, 2011, [Brooks] appeared and asked for leave to represent himself and for another continuance to prepare his defense. After a colloquy, this Court concluded that the request was a delay tactic, so it denied the continuance request. [Brooks] agreed to allow appointed counsel to continue his representation. The *voir dire* of prospective jurors then began. After the completion of questioning, the Assistant District Attorney exercised six peremptory challenges. A jury of 12 with two alternates was seated.

The next day, on August 17, 2011, defense counsel made an objection to the jury selection on the ground that there were three African Americans in the pool. One was stricken for cause. [Defense counsel] alleged that the ADA improperly struck the remaining two on racial grounds. This Court denied the motion.

Trial Court Opinion, 5/17/12, at 1-2 (citations omitted).

At the conclusion of trial, Brooks was convicted of four counts of criminal attempt to commit homicide,[1] four counts of aggravated assault,[2] one count of possession of an instrument of crime,[3] one count of loitering and prowling at night,[4] and one count of persons not to possess firearms.[5] A

---

[1] 18 Pa.C.S. § 901.

[2] 18 Pa.C.S. § 2702.

[3] 18 Pa.C.S. § 907.

[4] 18 Pa.C.S. § 5506.

[5] 18 Pa.C.S. § 6105.

post-sentence motion was filed and denied. Brooks then filed a notice of appeal to this Court.

This Court reversed the trial court in an opinion holding that it was error to deny Brooks' request for a continuance to allow him to represent himself. This Court reasoned that Brooks' request was timely because it was made prior to jury selection. The opinion indicated that the trial court has the responsibility to determine if a continuance in this type of matter is for the legitimate purpose of preparing a defense or if it is merely intended to obstruct the process of justice. This Court reversed the trial court on the grounds that there was little support in the record for the trial court's determination that Brooks' request was made merely to delay his trial.

The Commonwealth filed a petition for allowance of appeal, which the Supreme Court granted. Upon review, the Supreme Court determined that this Court's

> approach was problematic to the extent it could be read as: creating a presumption that a last-minute continuance request to proceed *pro se* should be granted, and to the extent that the decision appears to assign a burden upon the trial court to place "sufficient evidence" of "compelling reasons" on the record to support a conclusion that a defendant seeking a continuance in order to represent himself was engaged in an attempt to delay the proceedings.

**Commonwealth v. Brooks**, 104 A.3d 466, 479 (Pa. 2014). The Supreme Court went on to hold that the record and circumstances "are sufficient to make clear that the trial court's denial of the continuance request was not an abuse of discretion." **Id.**

Thus, we turn to Brooks' remaining appellate issues, which were not addressed previously by this Court. Brooks raises two additional issues. The first is a **Batson**[6] claim that the prosecutor improperly removed African Americans from the jury pool, resulting in an all-white jury. Secondly, Brooks argues that the trial court erred in ruling that the Commonwealth could introduce evidence of his past criminal convictions should he testify at trial.

We analyze a **Batson** claim pursuant to the following framework:

First, the defendant must make a prima facie showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the prima facie showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination. **Batson**, 476 U.S. at 97.

. . .

The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a prima facie case is proven, "does not demand an explanation that is persuasive or even plausible." **Purkett v. Elem**, 514 U.S. 765 (1995). Rather, the issue at that stage "is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reasons offered will be deemed race neutral." **Id.**

If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test, i.e., the ultimate determination of whether the opponent of the strike has carried

---

[6] **See Batson v. Kentucky**, 476 U.S. 79 (1986).

> his burden of proving purposeful discrimination. *Purkett*, 514 U.S. at 768. It is at this stage that the persuasiveness of the facially neutral explanation proffered by the Commonwealth is relevant.

*Commonwealth v. Roney*, 79 A.3d 595, 619 (Pa. 2009). The "trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous." *Commonwealth v. Williams*, 980 A.2d 510, 531 (Pa. 2009).

Additionally, an appellant must provide a "full and complete" record regarding the asserted *Batson* violation, including "identifying the race or ethnicity of the venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury selected." *Commonwealth v. Uderra*, 862 A.2d 74, 84 (Pa. 2004).

Here, defense counsel made a *Batson* challenge after the *voir dire* process concluded, but before the jury was sworn. The challenge alleged that Assistant District Attorney Michael Dugan used peremptory strikes to remove two African Americans from the jury pool such that the jury was entirely white. The trial court denied the motion. The trial court also conducted a post-trial *Batson* hearing, during which Dugan testified to his reasoning for exercising each of his peremptory strikes.

Dugan indicated that he only specifically recalled one strike against an African American, the individual assigned to be Juror #23. That individual previously had been charged by the Commonwealth on a gun charge, and

the individual stated he had been charged unfairly. Dugan indicated that he exercised a peremptory strike against the individual because Dugan did not believe the person could be fair. Dugan testified to his reasons for exercising the remaining peremptory strikes; each reason was a race-neutral reason, a fact which Brooks acknowledges. *See* Brief of Appellant, at 34 ("Under the standards established in cases interpreting *Batson*, it is conceded that the [] explanations of the assistant district attorney's strikes of African-Americans are race-neutral.")

Thus, whether the instant *Batson* claim has merit depends upon whether Brooks has carried his burden of proving purposeful discrimination. Notably, the trial court indicated that "the record is confused as to the racial composition of the jury panel and the individuals actually chosen." Trial Court Opinion, 5/17/12, at 3. Indeed, Defense counsel did not keep a record of the specific racial composition of either the potential or chosen jurors as mandated in *Uderra*, *supra*. As a result, neither the prosecution, the defense, nor the trial court can recall which potential juror, other than Juror #23, was African American or why he or she was struck.

Ultimately, Dugan can specifically remember using a peremptory strike for Juror #23, but Brooks has presented nothing to demonstrate any bias on Dugan's part in doubting that Juror #23 could be fair. As to the other potential African American juror, it is impossible for this Court to specifically review whether purposeful discrimination has been shown since no adequate record was kept to identify the individual in question. Indeed, Brooks' entire

***Batson*** argument is lacking due to trial counsel's failure to keep any sort of pertinent record and because it is solely premised on the argument that while two African Americans were available to be on the jury, neither was chosen.[7]

Moreover, the trial court observed Dugan and found his explanations to be credible based upon his demeanor and sincerity. Thus, we find no reason to disturb the findings of the trial court and conclude that the Commonwealth's peremptory strikes were properly used regarding the two potential African American jurors.

Next, Brooks argues that the trial court improperly held that his prior *crimen falsi* convictions would have been admissible at trial for impeachment purposes if Brooks had taken the stand.[8] Under Pa.R.E. 609, convictions involving dishonesty or false statement are generally admissible for the purpose of attacking the credibility of any witness. However,

---

[7] Initially, four African Americans were in the jury pool. Besides the two that are the focus of the instant ***Batson*** claim, one was removed from the pool for cause and another became an alternate juror whose services ultimately were not needed.

[8] This Court has specifically held that a defendant may challenge the trial court's impeachment ruling even though he did not testify at trial. ***See Commonwealth v. Jackson***, 561 A.2d 335, 338 (Pa. Super. 1989), *affirmed*, ***Commonwealth v. Jackson***, 585 A.2d 1001 (Pa. 1991) (refusing to adopt ruling in ***Luce v. United States***, 469 U.S. 38 (1984), which provides that under Federal Rule of Evidence 609, a defendant cannot challenge a ruling permitting impeachment unless he takes the stand and is impeached).

> [e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Pa.R.E. 609(b).[9]

The *crimen falsi* convictions relevant to the instant matter arose when Brooks entered *nolo contendere* pleas in 1992 to charges for burglary,[10] theft by unlawful taking,[11] receiving stolen property,[12] and criminal

---

[9] This version of Rule 609(b) was in effect at the time of trial. In 2013, a new version of the rule was promulgated, which retains similar language, as follows:

> **(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:
>
> (1) its probative value substantially outweighs its prejudicial effect; and
>
> (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

[10] 18 Pa.C.S. § 3502.

[11] 18 Pa.C.S. § 3921.

[12] 18 Pa.C.S. § 3925.

trespass.[13]  Trial counsel indicated that Brooks was incarcerated on these charges until sometime in 1999, although the exact date of his release is not a matter of record in this case.  It was not disputed at trial that more than ten years had elapsed from the time Brooks was released from incarceration for the relevant crimes to the date that trial took place.

The exception in Rule 609(b) to the admissibility of *crimen falsi* convictions provides that the probative value must outweigh the prejudicial effect of such convictions.  Additionally, sufficient advance written notice must be provided to prevent unfair surprise regarding the intended use of such evidence.  Here, Brooks makes no argument about whether the probative value outweighs the prejudicial effect of his prior convictions.  Instead, the argument in Brooks' appeal is narrowly focused on his contention that written notice of the Commonwealth's intent to use his prior convictions was not provided to him.

Brooks admits that there is some ambiguity within the rule regarding notice, since the rule specifies that written notice must be provided but indicates that the intended effect of the written notice is to provide a "fair opportunity" to contest the use of criminal convictions more than ten years old.  *See* Brief of Appellant, at 41.  However, Brooks maintains his contention that the trial court's determination that the prior convictions

_____

[13] 18 Pa.C.S. § 3503.

would be admissible for impeachment purposes without advance written notice, regardless of the context, was a fundamental error.

This Court has considered a matter similar to the instant matter, in which the appellant made a "technical Pa.R.E. 609(b) argument, namely, that the trial court erred in permitting the old *crimen falsi* conviction when the Commonwealth never provided Appellant 'with advance written notice of its intent to use such evidence,' thus depriving him of 'a fair opportunity to contest the use of such evidence.'" **Commonwealth v. Palo**, 24 A.3d 1050, 1057 (Pa. Super. 2011). This Court rejected this argument, holding that Palo could not reasonably argue that he lacked a fair opportunity to contest the use of his prior convictions, particularly where the trial court conducted an *in camera* hearing and defense counsel thoroughly argued his case to exclude the evidence. **Id.** at 1058 (citing **United States v. Sloman**, 909 F.2d 176, 180 (6th Cir. 1990) (upholding use of stale conviction under identical F.R.E. 609 provision until after witness took stand; written notice not required because counsel was not unfairly surprised)).

Here, while written notice specifically informing Brooks of the Commonwealth's intent to use Brooks' prior convictions was not provided, the Commonwealth provided a written copy of Brooks' criminal record to defense counsel well in advance of the trial. Thus, there was no unfair surprise regarding the existence of Brooks' criminal convictions. Futhermore, the trial court held an *in camera* hearing prior to the defense putting on its case, during which defense counsel was permitted to argue

against the use of Brooks' prior convictions. Therefore, Brooks was provided with a "fair opportunity" to contest the use of his prior convictions, in accordance with the thrust of Pa.R.E. 609(b). **Palo**, **supra**.

Additionally, this Court has indicated that where the time between the release of a defendant for a prior conviction and the time of trial on a new charge is "artificially increased," the prior conviction retains relevance. **See Commonwealth v. Harris**, 884 A.2d 920, 925-26 (Pa. Super. 2005). In **Harris**, the defendant was charged with a crime within ten years of release for prior *crimen falsi* convictions, but trial was delayed for several years. Similarly, in the instant matter, Brooks' was charged with a crime within ten years of his release, his trial was delayed significantly, and he also had been in hiding for approximately six months prior to his capture. Although the **Harris** Court did not consider the issue of whether appropriate written notice was necessary because the issue was not raised at trial, the Court's treatment of the "artificial delays" indicates that prior convictions in that context are likely to be more probative than prejudicial and thus should be admitted into evidence for impeachment purposes. **See id.**

Ultimately, Brooks' sole contention is that written notice was not provided regarding the Commonwealth's intent to use Brooks' prior convictions for impeachment purposes. Significantly, no argument has been provided to indicate that Brooks' prior convictions are more prejudicial than probative, other than mere references to the convictions being more than ten years old. Indeed, despite an *in camera* opportunity to do so, nothing

was argued before the trial court, and nothing has been argued in this appeal, to demonstrate any undue prejudice that would result from admitting Brooks' prior convictions into evidence. Thus, we find that any error in ruling that Brooks prior *crimen falsi* convictions would have been admissible is harmless error.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/7/2015