J-S52021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD DAVIS, | |
| Appellant | No. 2042 EDA 2015 |

Appeal from the Judgment of Sentence April 10, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0000915-2011

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER, [*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED NOVEMBER 22, 2016**

Appellant, Ronald Davis, appeals *nunc pro tunc* from the April 10, 2012 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court") following his convictions of aggravated assault, violation of the uniform firearms act ("VUFA"), and possession of an instrument of crime ("PIC").[1]  Appellant challenges the sufficiency and weight of the evidence, admission of a stipulation, and trial counsel's ineffectiveness.  Upon review, we affirm.

The trial court summarized the testimony as follows.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702, 6108, and 907, respectively.

[]Philadelphia Police Officer Anthony Mergiotti testified that on July 7, 2008, around 6:20 p.m., he received a phone call for a report of a shooting at 2050 Gerritt Street in South Philadelphia. Upon arrival, the officer located victim, Freddie Mears [("the victim")], who was suffering from a gunshot wound and lying on the living room floor of a house. The victim was awake and responsive, but he did not provide any flash information at that time. The victim was shot in the buttock and was transported by Medic to Jefferson Hospital for the gunshot wound. The officer wrote in his 75-48 police paperwork that the victim had stated at that time that he was shot from behind by an unknown person.

At trial, the victim did not "navigate back and forth" in regard to who had shot him. Instead, he unequivocally testified that [Appellant] was the shooter, and explained why he was reluctant to tell police who shot him and why he chose not to identify [Appellant] at the preliminary hearing. The victim[] first admitted that he has in the past been convicted of forgery, burglary, and possession of a controlled substance. When the shooting occurred in 2008, he worked as a "handyman" in the neighborhood by turning on gas, electric, water, and cable for people who had their services shut off. On July 7, 2008, the victim received a phone call from [Appellant] requesting that the victim turn on [Appellant's] electric. The victim told [Appellant] he could not do it at that time because he was busy. During the conversation, the victim retorted, "If you can't wait, get somebody else to do it." The victim believed that [Appellant] took this comment as a sign of disrespect and asked the victim, "Well, where are you at?" The victim told him, "I'm on 20ᵗʰ and Gerritt," which was a friend's house. When the victim was finished working at his friend's house, he was standing outside that location when he noticed [Appellant] drive through the block in a truck. [Appellant] then came back around the block, this time as the passenger in the truck, and the truck drove up to the next hundred block of Gerritt Street. [Appellant] got out of the truck and walked up to the victim. The victim asked, "Yo, what's going on?" [Appellant] pulled a silver gun out of his pants. The victim questioned, "Oh, you going to pull a gun out on me?" The victim then turned around, whereupon [Appellant] shot him in his buttock. [Appellant] ran, jumped in the truck, and the truck pulled off. The victim walked back to his friend's house, and told him "I been shot. Call the cops." The police and ambulance came.

Candidly, the victim admitted that he did have heroin in his system when he was shot, but testified that he had a clear head when questioned by Detective McKenna at Jefferson Hospital. The victim did not initially tell Detective McKenna who shot him because he was going to "take care of matters in [his] own hands." Nevertheless, at the time of the initial [s]tatement, the victim did describe [Appellant] and his age. Later in the same statement, the victim admitted that he knew who shot him, but wasn't "saying," then added "I don't know his real name. I know he goes as Bilal . . . My brother knows his name. I think his name is Ronald." The victim told the Detective that he would be able to identify [Appellant] if he saw him again. [FN1.]

[Appellant] was never picked up and arrested for the crime in 2008. However, in 2010, the victim was transported to South Detectives to speak to Detective Johnson. The Detective asked the victim about the 2008 shooting and showed the victim a photo array of six or seven suspects. At that time, the victim immediately picked out [Appellant] as the person who shot him." The victim testified that he had known [Appellant] for a long time because he had been doing work on and off for him for a while. When asked, "When did you first meet [Appellant], do you think?" The victim answered, "I think it was in school."

At the preliminary hearing, the victim refused to identify [Appellant], but explained at trial that he had lied at the preliminary hearing because he still wanted to take matters into his own hands. [FN3.] The victim explained at trial ". . . I know if I did [take matters into my own hands], you know, I probably would have been in jail for the rest of my life. [FN4.]

[Appellant] also testified. He began by explaining that he was, at the time of this trial, serving a 5 to 10 year sentence for aggravated assault in which [he] pleaded guilty for shooting his brother-in-law. He first testified that his brother-in-law "pulled a gun out on [him][,] . . . we wrestled for it[,] . . . he got shot in the leg[,] and I got time for it." Later, [Appellant] admitted that he confronted his brother-in-law early in the morning at a bus stop at 20th and Moore Streets, asked him 'What's up with you and my brother, Brian?", and the victim accused him of shooting him. [Appellant] pled guilty to the facts of pulling out a nickel plated gun, shooting his brother-in-law in the right leg, and firing at his nephew. [Appellant] testified that he only pled guilty to the crime because he did not want to get a lot of jail time.

FN1. Detective Michael McKenna confirmed the victim's testimony. Detective McKenna also testified that the victim was alert, in pain, but talkative and coherent, although initially a little reluctant to tell the Detective what happened. On [the] first page of the [s]tatement, when asked, "Who was the guy?", the victim said "I don't know him." When asked, "Have you ever seen him before?", the victim stated, "No." Later in the [s]tatement, when asked, "Do you know who shot you?", the victim replied, "I know, but I ain't saying." When asked why that person shot him, the victim replied that it was "[b]ecause I didn't turn his electric on. I was doing work for him." When asked, "Are you going to tell me his name?" he answered, "I don't know his real name. I just know that he goes by Bilal, Bilal. My brother knows his name. I think his name is Ronald. I don't know his last name.

Detective Eric Johnson also confirmed the victim's testimony. The Detective explained that, when the victim circled the photo array of [Appellant], he circled so hard as if he was trying to rip it because he was angry and stated clearly, "That's the guy that shot me." The victim indicated that it was "Bilal" nickname, first name "Ronald" that shot him. He also recalled going to the same high school with [Appellant] but different grades. The victim against explained that he did work for [Appellant].

FN3. In a phone call from prison to his wife that was later played in court by the Commonwealth, the victim told her that everything worked out at the preliminary hearing, which meant that he wasn't going to press charges and would take matters into his own hands.

FN4. The stipulations read into the record were as follows: the Commonwealth introduced a Pennsylvania State Police document to prove that [Appellant] did not have a valid license to carry a firearm in PA and did not have a valid sportsman's firearm permit; the Commonwealth admitted the phone recording [Appellant] made to his wife while in prison and after the preliminary hearing; and the Commonwealth admitted the Jefferson Hospital medical records into the record which showed that, on July 7, 2008, the victim was treated for a gunshot wound to his buttock.

Trial Court Supplemental Opinion, 10/13/15, at 3-7 (internal citations omitted) (footnote 2 omitted).

At the conclusion of the jury trial on February 27, 2012, Appellant was convicted of aggravated assault, VUFA, and PIC. On April 10, 2012, Appellant was sentenced to 10 to 20 years for aggravated assault, a consecutive period of 2½ to 5 years for VUFA and, concurrent to the VUFA

sentence, 2½ to 5 years for PIC. Appellant did not file post-sentence motions or a direct appeal.

Appellant filed a timely *pro se* PCRA petition on March 6, 2013. After the trial court appointed counsel, Appellant filed an amended PCRA petition requesting reinstatement of his direct appeal rights. The trial court granted Appellant the right to appeal *nunc pro tunc* on June 25, 2012. Appellant filed a notice of appeal on July 7, 2015. On July 15, 2015, the trial court directed Appellant to file a concise statement of matters complained of on appeal within 21 days. The trial court entered an opinion on August 12, 2015, noting that Appellant failed to comply with the trial court's order of July 15, 2012; therefore, Appellant waived all issues on appeal. Counsel for Appellant requested an extension to file a concise statement, which the trial court granted on August 17, 2015. Appellant filed a concise statement on August 27, 2015. The trial court filed a supplemental opinion on October 13, 2015.

Appellant raises four issues on appeal.

  I.  Whether the evidence presented at trial was sufficient to convict the Appellant of all charges where the verdicts were based on an identification made by a witness who navigated back and forth in statements to police, testimony at the preliminary hearing, and during trial about whether [Appellant] committed the offense.

 II.  Whether the verdicts were against the weight of the evidence where the jury heard testimony from one witness who said he did not know who committed the offense, to he did know the offender, back to he did not know the offender, particularly where the witness has been convicted of multiple forgery and burglary offenses.

III.  Whether the trial court erred in admitting the evidence of [Appellant's] convictions for Violation of the Uniform Firearms

Act where trial counsel failed to acknowledge a stipulation on the record, where no custodian of record testified regarding the quarter sessions file, and where such evidence presented to the jury was highly prejudicial to [Appellant], the [trial] court's admission of said evidence constituted an abuse of discretion which denied the Appellant the right to a fair trial guaranteed under both the Pennsylvania and U.S. Constitutions.

IV. Whether trial counsel provided ineffective assistance of counsel by failing to present evidence that the Appellant never attended Southern High School with the complainant and where such evidence would have established that the complainant was lying, mistaken, or fabricating/bolstering his identification and testimony?

Appellant's Brief at 3.

Appellant's first challenge is to the sufficiency of the evidence, specifically to the identification of Appellant. This Court's standard of review for sufficiency of the evidence is well established.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mauz*, 122 A.3d 1039, 1040-41 (Pa. Super. 2015) (quoting *Commonwealth v. Rahman*, 75 A.3d 497, 500-501 (Pa. Super. 2013)).

- 6 -

Essentially, Appellant's argument is that the victim altered his story at different procedural stages and has prior convictions involving *crimen falsi*; therefore, there was insufficient evidence for conviction. In essence, he is asking us to find the victim incredible because of his prior inconsistency. Appellant's argument goes to weight and credibility rather than the sufficiency. **See Commonwealth v. Palo**, 24 A.3d 1050, 1055 (Pa. Super. 2011) ("Directed entirely to the credibility of the Commonwealth's chief witness, [a]ppellant's claim challenges the weight, not the sufficiency of the evidence."). "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part or none of the evidence, and to assess the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the jury on issues of credibility." **Id.** (citations omitted).

Even if Appellant's argument went to the sufficiency of the evidence, it is meritless because at trial the victim repeatedly identified Appellant as the shooter. Furthermore, the victim testified that he changed his story because he wanted to take care of the matter himself rather than press charges. As there was testimony identifying Appellant as the shooter, Appellant's sufficiency claim fails.

Appellant's second argument is a challenge to the weight of the evidence. After having his appellate rights reinstated *nunc pro tunc*, via a PCRA petition, Appellant did not file any post-sentence motions. In **Commonwealth v. Liston** (**Liston II**), 977 A.2d 1089 (Pa. 2009), our

Supreme Court held that defendants who have been granted the right to file an appeal *nunc pro tunc* are not automatically granted the right to file post-sentence motions *nunc pro tunc*. **Liston II**, 977 A.2d at 1093-94. In seeking PCRA relief, Appellant did not attempt to have his right to file a post-sentence motion reinstated. A challenge to the weight of the evidence cannot be raised for the first time on appeal. **See Commonwealth v. Lofton**, 57 A.3d 1270 (Pa. Super. 2012); Pa.R.Crim.P. 607. Appellant failed to challenge the weight of the evidence prior to this instant appeal; therefore, Appellant's challenge to the weight of the evidence is waived.

Even if the claim were not waived, Appellant's claim is meritless because the jury was free to believe all, part, or none of the victim's testimony, and this Court cannot substitute its judgment for that of the jury on issues of credibility.

Appellant's next challenge is to the admission of a stipulation that was read into the record. Appellant asserts that trial counsel failed to acknowledge the stipulation on the record, thereby violating Appellant's right to a fair trial. "Rulings on the admissibility of evidence . . . are within the discretion of the trial judge, and such rulings will form no basis for appellate relief absent an abuse of discretion." **Commonwealth v. May**, 887 A.2d 750, 761 (Pa. 2005) (citations omitted). A claim that the trial court violated an appellant's rights to confront witnesses must be forwarded at trial or it is waived. **Id.**; **see also** Pa.R.A.P. 302(a). Upon this Court's review of the record it is apparent that trial counsel did not object to the stipulation being

read into the record. As counsel did not object on the record, the claim was not preserved on appeal. Appellant's claim fails.

Next, Appellant asserts that his conviction was the result of ineffectiveness of counsel, Daniel O'Riordan, Esquire. Specifically, Appellant asserts that Attorney O'Riordan was ineffective for failing to present evidence that it was impossible for the witness to have met Appellant at Southern High School because Appellant did not attend that school. Upon review of the record, we conclude the trial court should not have addressed this issue.

The "general rule of deferral to PCRA review remains the pertinent law on the appropriate timing of review of claims of ineffective assistance of counsel." *Commonwealth v. Holmes*, 79 A.3d 562, 563 (Pa. 2013). In *Holmes*, our Supreme Court noted only two exceptions to this general rule. The first exception is where "there may be an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration or relief is warranted." *Id.* at 577. The second exception provides that trial courts have discretion, upon good cause shown, if there are multiple or prolix claims of counsel ineffectiveness, and the defendant expressly waives PCRA review. *See id.* at 563-64.

In the matter *sub judice*, the trial court did not grant relief and there is nothing in the record indicating that Appellant expressly waived PCRA review. Thus, the Appellant's claim does not fall under the two exceptions to

the general rule of deferral to PCRA review. ***See id.*** at 563-64. Accordingly, Appellant is not entitled to relief on his ineffectiveness claim on direct appeal.[2]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2016

___

[2] We do not express any opinion regarding the merits of Appellant's ineffectiveness claim.