J-S33019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES ANTHONY WEBSTER | : | |
| | : | |
| Appellant | : | No. 101 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 9, 2018
In the Court of Common Pleas of Tioga County
Criminal Division at No(s):  CP-59-CR-0000359-2017

BEFORE:  LAZARUS, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 08, 2019**

Charles Anthony Webster appeals from the judgment of sentence imposed on November 9, 2018.  On October 17, 2018, a jury found Webster guilty of one count each of conspiracy to commit aggravated assault and conspiracy to commit simple assault.[1]  The trial court sentenced Webster to serve an aggregate term of 42 to 84 months' imprisonment.  On appeal, Webster challenges the denial of his motion for a mistrial and the sufficiency of the evidence.  Based upon the following, we affirm.

As the parties are well acquainted with the facts and procedural history of this case, we do not restate them.  We briefly note, on August 21, 2017, at approximately 9:00 p.m., Webster and his son, Justin Webster, assaulted

---

[1] 18 Pa.C.S.A. §§ 903, 2702(a)(1), and 2701(a)(2), respectively.

Logan McGovern. Approximately two days previously, McGovern got into a fistfight with Justin Webster. On the evening in question, McGovern drove his car into his driveway. A car, driven by Webster, pulled in behind McGovern's car, and parked perpendicularly to it. Justin Webster then exited the passenger side of the car, pulled McGovern from his car, and began to hit him. As the fight progressed, Webster emerged from the car carrying a blue aluminum baseball bat and hit McGovern once on the head. McGovern dropped to the ground, bleeding profusely. As neighbors came out to break up the fight, the Websters fled the scene. *See* N.T. Trial, 10/17/2018, at 17-27, 46-53, 64-70.

At trial, Samantha Dietrich, Clinton Onks, and Jon Onks, all neighbors of McGovern, who witnessed the fight, testified. All three were previously acquainted with Justin Webster; the Onkses were also acquainted with Webster. All three had previously given statements to the police in which they identified Justin Webster as the individual who hit McGovern with the baseball bat. At trial, Dietrich and Jon Onks maintained they had given the wrong name to the police and it was Webster, not Justin Webster, who hit McGovern with a bat. Clinton Onks also initially testified Webster hit McGovern with the bat but then changed his mind and said his initial statement was probably the more accurate one but he was not one hundred percent sure which Webster hit McGovern with the bat. McGovern testified he was unable to remember the incident. *See id.* at 17-30, 46-53, 55-57, 64-73, 99-107.

Justin Webster, who had previously entered a guilty plea in the matter, testified as a Commonwealth witness but gave a very different version of the events. He claimed McGovern was the aggressor, no one hit McGovern with a bat, and his father, Webster, merely drove him to the scene and had no idea he intended to get into an altercation with McGovern. *See id.* at 79-98.

During direct examination of the investigating officer, Pennsylvania State Trooper Terry Seal, the assistant district attorney asked him if he had interviewed Webster. Seal replied he had not because Webster declined to speak with him. *Id.* at 133. Defense counsel immediately objected and moved for a mistrial. *Id.* at 135. After a sidebar conference, the trial court gave a cautionary instruction. *Id.* Defense counsel did not have any objections to the court's instruction and did not seek any additional relief. *Id.* Later, during its charge, the trial court again instructed the jury on this issue; when asked by the trial court, defense counsel had no objections to the charge and did not seek any additional instructions. *Id.* at 175, 177.

As noted above, the jury found Webster guilty of the aforementioned charges and the trial court sentenced him on November 9, 2018. On November 15, 2018, Webster filed a post-verdict motion. The trial court

issued an opinion and order denying the motion on December 17, 2018. The instant, timely appeal followed.[2]

In his first claim, Webster contends the trial court erred in denying his motion for a mistrial. *See* Webster's Brief, at 6-10.

Our standard of review is as follows:

> We review the trial court's decision to deny a mistrial for an abuse of discretion. A mistrial is necessary only when the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice.

*Commonwealth v. Bedford*, 50 A.3d 707, 712–713 (Pa. Super. 2012) (citations and internal quotation marks omitted), *appeal denied*, 57 A.3d 65 (Pa. 2012).

Further, this Court has stated:

> If the Commonwealth mentions a defendant's post-arrest silence, the court might still be able to cure any prejudice through prompt and adequate curative instructions. To evaluate whether cautionary instructions can cure a reference to a defendant's post-arrest silence, courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instructions. If the reference to the defendant's post-arrest silence was such that it incurably compromised the jury's objectivity and would deprive the defendant of a fair trial, then the court should grant a mistrial.

---

[2] On February 8, 2019, in response to the trial court's order, Webster filed a concise statement of errors complained of on appeal. On February 19, 2019, the trial court issued an order adopting its earlier opinion as its Pa.R.A.P. 1925(a) statement. We note the Commonwealth did not file a brief in this matter.

*Commonwealth v. Moury*, 992 A.2d 162, 176 (Pa. Super. 2010) (internal

citations, quotation marks, and footnote omitted).

At trial, the assistant district attorney asked Trooper Seal a series of

questions about his investigation of the case and the following occurred:

> [The Commonwealth]:  Now, there were two defendants in this matter, originally, we're only here on one today, but did you interview either of those defendants?
>
> [Trooper Seal]:  Yes, I interviewed Justin Webster.
>
> [The Commonwealth]:  Okay; and did you interview [Webster] here, Charles Webster?
>
> [Trooper Sea]:  No, he declined to speak with me.
>
> [The Commonwealth]:  Okay —
>
>                    [Defense Counsel]:  — objection, Your Honor. May we approach?

N.T. Trial, 10/17/2018, at 133.  Following a sidebar conference, during which

the trial court strongly admonished the assistant district attorney, it gave the

following cautionary instruction.

> All right, Members of the Jury, the — any criminal defendant, or anybody suspected of having committed an offense, or anybody being questioned by police officers or governmental officers, for any reason at all, has an absolute right not to make any kind of statements.  Now, for this officer to have testified that [Webster] refused to make a statement or refused to testify was improper; and I've appropriately chastised the District Attorney for having asked the question that resulted in that response.  And I am charging you, Members of the Jury, that you absolutely, positively, cannot use against [Webster] the fact that he would not speak with this Trooper.  There are any number of reasons why he wouldn't have done that, which may or may not have something to do with this case.  But, in any event, you cannot use that

- 5 -

against him, and I instruct you not to use that against him in the event this case goes to deliberations.

*Id.*, at 135. Defense counsel did not object to this charge or seek any additional relief.

In this case, Trooper Seal's reference to Webster's post-arrest silence was brief and fleeting. His answer was in response to a series of questions about the course of his investigation. *See* N.T. Trial, 10/17/2018, at 130-133. The Commonwealth did not intend to elicit a response regarding Webster's post-arrest silence. Instead, Trooper Seal merely narrated what actions he took in investigating the matter, which included an attempt to interview Webster; however, Webster was unwilling to speak to him. The Commonwealth did not exploit Webster's post-arrest silence. It did not continue questioning Trooper Seal about the subject. Finally, the trial court gave a complete curative instruction.

"[A] mistrial is not necessary where the [trial court's] cautionary instructions are adequate to overcome any possible prejudice." *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007), *cert. denied*, 552 U.S. 1316 (2008) (citation omitted). Further, "[w]hen the trial court provides cautionary instructions to the jury in the event the defense raises a motion for a mistrial, [t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Parker*, 957 A.2d 311, 319 (Pa. Super. 2008), *appeal denied*, 966 A.2d 571 (Pa. 2009) (citation and internal quotation marks omitted). Thus, we find all four factors weigh in favor of finding the trial

court's instruction cured any prejudice Webster may have suffered because of Trooper Seal's statement. Therefore, we conclude the trial court did not abuse its discretion in denying Webster's motion for mistrial. Webster's first claim does not merit relief.

In his second claim, Webster contends the evidence was insufficient to sustain his conviction. **See** Webster's Brief, at 10-15. Because we find Webster's sufficiency claim is, in actuality, an unpreserved challenge to the weight of the evidence, this claim is waived.

In the instant matter, Webster argues, "the evidence produced at trial was so contradictory to make any decision by the jury the product of conjecture or guesswork." Webster's Brief at 10. He further states, "the witnesses who testified at trial contradicted earlier statements made by them as to what had actually occurred." **Id.** at 10-11. Lastly, he maintains "the testimony of the eyewitnesses differs with the testimony of the alleged co-conspirator [Justin Webster] and the victim himself." **Id.** at 14.

Initially, we note a challenge to credibility of the evidence is a claim regarding the weight of the evidence, not the sufficiency. This Court has explained:

> This argument goes to the credibility of the witness's testimony, and is, therefore, not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded. **Commonwealth v. Palo**, 24 A.3d 1050, 1055 (Pa. Super. 2011) *appeal denied*, 613 Pa. 663, 34 A.3d 828 (2011) (The appellant's "sufficiency" argument directed entirely to the credibility of the Commonwealth's chief witness challenged the weight, not the sufficiency, of the evidence).

*Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013).  *See Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (claim jury should have believed appellant's version of event rather than that of victim goes to weight, not sufficiency of evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) (review of sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997) (credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence).

It is well-settled law a defendant must raise a claim asserting the verdict is against the weight of the evidence before the trial court, either orally at sentencing or in a written post-sentence motion.  *See* Pa.R.Crim.P. 607; *Commonwealth v. Jones*, 191 A.3d 830, 834-835 (Pa. Super. 2018) (challenge to weight of evidence must be raised in timely pre or post-trial motion).  Webster did neither.  Therefore, he waived any possible weight of the evidence claim.

In an attempt to bolster his contention that his claim is a proper challenge to the sufficiency of the evidence rather than the weight of the evidence, Webster argues:

> When witnesses are offering contradictory versions of what occurred, it is unreasonable to believe a jury can find beyond a reasonable doubt that one version of events is the correct version.

- 8 -

This is especially true when the in court statements contradicts both the victim and the alleged co-conspirator. Based on these factors, … the verdict in the jury was a product of guesswork and does not meet the standard of proof beyond a reasonable doubt.

Webster's Brief at 16. In support of his claim, Webster relies upon the Pennsylvania Supreme Court's decision in **Commonwealth v. Brown**, 52 A.3d 1139 (Pa. 2012). **See id.** at 15. However, we find **Brown** is inapposite.

Our Supreme Court framed the issue in **Brown** as follows:

Whether [Appellant's] conviction supported solely by out-of-court statements recanted at trial violates the guarantees of due process provided by the Fourteenth Amendment to the United States Constitution or Article I, Section [Nine] of the Pennsylvania Constitution?

**Id.** at 1154. Ultimately, the Court concluded such evidence was sufficient to sustain a conviction and did not violate the due process clauses of the United States and Pennsylvania Constitutions. The Court opined:

[I]n sum, then, our review of authority from the United States Supreme Court and our Court, as well as our consideration of jurisprudence from other states which reject a *per se* rule, coupled with our over quarter-century of experience with the use of prior inconsistent statements as substantive evidence by the courts of this Commonwealth, convinces us that criminal convictions which rest only on prior inconsistent statements of witnesses who testify at trial do not constitute a deprivation of a defendant's right to due process of law, as long as the prior inconsistent statements, taken as a whole, establish every element of the offense charged beyond a reasonable doubt, and the finder-of-fact could reasonably have relied upon them in arriving at tits decision. Prior inconsistent statements, which meet the requirements for admissibility under Pennsylvania law, must, therefore, be considered by a reviewing court in the same manner as any other type of validly admitted evidence when determining if sufficient evidence exists to sustain a criminal conviction.

**Brown, supra,** at 52 A.3d at 1170-1171.

In the instant matter, unlike in **Brown**, Dietrich and both Onkses never recanted their initial statements. Instead, both Dietrich and Jon Onks claimed they had made errors in their original statements regarding which Webster wielded the bat. Clinton Onks waivered in his testimony, ultimately concluding his memory of the incident was better at the time he gave his initial statement to the police. Justin Webster, despite his guilty plea to aggravated assault, testified to a self-serving version of the events wildly at odds with the testimony of Dietrich and the Onkses. Moreover, the **Brown** Court held that prior inconsistent statements, which meet the admissibility standards, may alone be sufficient to sustain a conviction. Accordingly, Webster's second claim does not merit relief.

For all the foregoing reasons, we affirm Webster's judgment of sentence.[3]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/08/2019

_____

[3] This Court received notification Webster's counsel will be suspended from the practice of law effective October 28, 2018. Given this, we direct copies of this decision be sent both to counsel and directly to Webster.