**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEITH DAVID CERQUEIRA | : | |
| | : | |
| Appellant | : | No. 58 WDA 2018 |

Appeal from the Judgment of Sentence December 15, 2017
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0005541-2016

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and MURRAY, J.

MEMORANDUM BY GANTMAN, P.J.E.:                    **FILED APRIL 09, 2019**

Appellant, Keith David Cerqueira, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his bench trial convictions for driving under the influence ("DUI")—general impairment, DUI—high rate of alcohol, reckless driving, failure to keep right, and period for required lighted lamps.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add the following facts that Appellant's blood draw occurred at 1:53 a.m. on September 21, 2016, which was 2 hours and 16 minutes after Officer Piraino initiated the traffic stop.  On February 1, 2018, the court

_____

[1] 75 Pa.C.S.A. §§ 3802(a)(1), (b), 3736(a), 3301(a), and 4302(a)(1), respectively.

ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied on February 21, 2018.

Appellant raises the following issues for our review:

> WHETHER THE COURT ERRED IN CONVICTING [APPELLANT] OF RECKLESS DRIVING WHEN THERE IS NO EVIDENCE HIS ERRATIC DRIVING POSED ANY RISK TO ANY OTHER MOTORIST ON THE ROAD[?]
>
> WHETHER THE COURT ERRED IN ADMITTING THE EVIDENCE OF [APPELLANT]'S BLOOD TESTING WHEN THERE WAS NO EVIDENCE WHY THE COMMONWEALTH COULD NOT HAVE CALIBRATED THE GREENSBURG POLICE'S BREATH TESTING MACHINE AND TAKEN A BREATH TEST WITHIN THE TWO HOURS REQUIRED BY 75 PA.C.S.A. § 3802[?]
>
> WHETHER THE COURT'S CREDIBILITY DETERMINATIONS ARE VALID CONSIDERING [THAT] OFFICER PIRAINO ADMITTED HE FAILED TO DO HIS DUTY [TO] READ [APPELLANT] THE STANDARD *O'CONNELL*[2] WARNINGS[?]

(Appellant's Brief at 2).

As a preliminary matter, issues regarding witness credibility implicate the weight of the evidence. *Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa.Super. 2011), *appeal denied*, 613 Pa. 663, 34 A.3d 828 (2011). Generally, a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pa.R.Crim.P. 607. The Rule provides:

**Rule 607. Challenges to the Weight of the Evidence**

---

[2] ***Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. O'Connell***, 521 Pa. 242, 555 A.2d 873 (1989).

> (A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:
>
>> (1) orally, on the record, at any time before sentencing;
>>
>> (2) by written motion at any time before sentencing; or
>>
>> (3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "As noted in the comment to Rule 607, the purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." *Commonwealth v. Gillard*, 850 A.2d 1273, 1277 (Pa.Super. 2004), *appeal denied*, 581 Pa. 672, 863 A.2d 1143 (2004). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. *Commonwealth v. Burkett*, 830 A.2d 1034 (Pa.Super. 2003). An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim, even if the trial court responds to the claim in its Rule 1925(a) opinion. *Id.*

Instantly, Appellant failed to challenge the credibility of witnesses before the trial court in a motion for a new trial. *See* Pa.R.Crim.P. 607; *Palo, supra*. Rather, Appellant raised his weight claim for the first time in his Rule 1925(b) statement. *See Burkett, supra*. Thus, his third issue on appeal is waived. *See* Pa.R.Crim.P. 607; *Gillard, supra*; *Burkett, supra*.

With respect to Appellant's issues one and two, after a thorough review

of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Rita Donovan Hathaway, we conclude those issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of those questions presented. (*See* Trial Court Opinion, filed February 26, 2018, at 7-11) (finding: **(2)** Commonwealth established good cause for Appellant's delayed blood draw; Officer Piraino accommodated Appellant's request for breath test even though they had already arrived at hospital and Penn Township station did not have breathalyzer; upon arriving at Greensburg Police Station, Officer Piraino observed Appellant for required 20-minute period, however, Officer Piraino was subsequently informed breathalyzer was not functioning properly; at that point, Appellant stated he would voluntarily submit to blood test; blood test occurred shortly after 2 hour mark; Officer Piraino testified he did not observe Appellant drink alcohol during time between traffic stop and chemical test; **(1)** Appellant's actions created substantial risk of traffic accident/injury where, at 11:30 p.m., he drove in wrong direction, without headlights, for significant period of time, making himself invisible to any driver traveling in correct lane; Commonwealth presented sufficient evidence to convict Appellant of reckless driving). The record supports the trial court's rationale. Accordingly, Appellant's third issue is waived; with respect to Appellant's first and second issues on appeal, we affirm based on the trial court opinion.

Judgment of sentence affirmed.

- 4 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/9/2019

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA – CRIMINAL DIVISION**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) |
| | ) |
| VS. | ) |
| | )    No. 5541 C 2016 |
| KEITH DAVID CERQUEIRA, | ) |
| Defendant. | ) |

**STATEMENT OF THE COURT
ISSUED PURSUANT TO PA.R.A.P. RULE 1925**

**AND NOW,** this ⟨26⟩ day of February, 2018, it appearing to the Court that the Defendant filed a Notice of Appeal from the judgment of sentence dated December 15, 2017, and that Defendant filed a Concise Statement of the Errors Complained of on Appeal as Ordered by this Court, pursuant to Rule 1925(a) of the Rules of Appellate Procedure, the reasons for Defendant's conviction are as follows:

## I.    FACTUAL AND PROCEDURAL HISTORY:

The charges in this case arise from a traffic stop and arrest that occurred on September 20, 2016.

Defendant was charged with one count of driving under the influence of alcohol or controlled substance, 75 Pa.C.S.A. §3802(a)(1), one count of driving under the influence of alcohol or controlled substance, 75 Pa.C.S.A. §3802(b), one count of reckless driving, 75 Pa.C.S.A. §3736, one count of driving on right side of roadway, 75 Pa.C.S.A. §3301(a), and one count of period for requiring lighted lamps, 75 Pa.C.S.A. § 4302(a)(1).

1

Defendant proceeded to a non-jury trial on October 18, 2017. The Court found him Guilty at all counts. Defendant was sentenced on December 15, 2017 to Incarceration for a period of 48 hours to 6 months. Defendant was to be paroled after 48 hours. Defendant's license was also suspended for 12 months. Defendant's sentence is currently stayed pending the instant appeal, which was filed on January 2, 2018.

Officer Ross Piraino of the Penn Township Police Department testified that he was on patrol in full uniform on September 20, 2016, at approximately 11:30 p.m. when he observed a silver Ford Taurus parked partially on the roadway and straddling the white fog line. (TT 38-39). He stated that the vehicle was stationary and that the vehicle's headlights were not on. (TT 39). He further stated that as he traveled closer to the vehicle, it began to travel on the roadway, still without its headlights activated. (TT 40). Officer Piraino passed the vehicle and turned around to re-approach it. (TT 40). At that point, the vehicle completely crossed onto the opposite lane of travel on the two-lane roadway. (TT 41). He stated that after approximately 100 feet, the vehicle traveled back into the correct lane. (TT 41). Officer Piriaino stated that as he approached the vehicle a second time, the driver eventually turned on the vehicle's headlights. Officer Piraino activated his emergency lights, but the vehicle did not stop. Eventually, the car did pull over, but Officer Piraino noted that the vehicle's slow reactions indicated that the driver could be intoxicated. (TT 43). The traffic stop occurred at 11:37 p.m. (TT 43).

Officer Piraino initially approached Defendant on the passenger side of the vehicle, and immediately noticed the odor of alcohol. (TT 43-44). Defendant was the sole

2

occupant. At that point, the officer requested Defendant's driver's license, registration, and insurance information. (TT 44). As Defendant was searching for the requested documentation, Officer Piraino stated, "At that time . . . I engaged in conversation . . . [H]e could not or he forgot or could not continue looking for the documents I requested. He could not do more than one thing at a time." (TT 45). Eventually, Defendant handed the officer an oil change sticker. (TT 47).

When the officer asked Defendant why he was driving without his headlights on, he stated that his car was "acting up." Defendant also stated that he had forgotten to turn his headlights on. (TT 49). When asked why he was driving in the wrong lane, he stated "it was no big deal," and that he had not caused an accident. (TT 50). Officer Piraino also testified that Defendant's speech was slurred, and his eyes were bloodshot. (TT 50). He also stated that he smelled the odor of alcohol emanating directly from his breath. (TT 50). Defendant relayed that he had drank two beers in Monroeville with his boss. (TT 51). At that point, the officer asked Defendant to step outside the vehicle and perform field sobriety tests. (TT 51). Defendant was visibly off-balance as he exited the vehicle, and was not able to walk in a straight line to the officer's patrol car. (TT 52). Officer Piraino stated that he asked Defendant to perform the field sobriety tests "as a formality," because he believed he already possessed probable cause to arrest on suspicion of DUI. (TT 52-53). Defendant informed the officer that he had an artificial foot, and as a result, the tests would be difficult for him to perform.

Defendant stated that he understood the officer's instructions for the walk and turn test. Although he asked Defendant to stand with his right foot in front of his left foot directly touching his heel to his toe, he was unable to do so. (TT 56). When he eventually did attempt to perform the test, he was only able to walk five steps before he lost his balance. (TT 58). He also attempted to perform the one-leg stand. However, he placed his foot back on the ground at the count of 8. (TT 60).

Officer Piraino placed Defendant under arrest at 11:56 p.m., as he believed that Defendant was intoxicated and incapable of safe driving. (TT 62). The officer informed him that he was requesting a blood draw at a local hospital. Defendant nodded his head and said "OK." (TT 65). On the way to Westmoreland Hospital, Defendant inquired as to whether he could give a breath test instead of a blood test. Officer Piraino informed him that it was his department's policy to request blood tests since it did not have an intoximeter or certified operators. (TT 66). The pair arrived at the hospital at 12:33 a.m. The officer removed Defendant from the vehicle and escorted him into the emergency room. (TT 66). Officer Piraino then asked him to sign registration paperwork: Defendant informed the officer that he would only sign under protest. (TT 67). At that point:

> [Defendant] at the time [] said he did not want to give blood, that he would do breath. I told him I would need to make a phone call as [the *Birchfield* case] was new to me as I wanted to make sure I was doing everything right. I didn't want to read any kind of implied consent or anything like that, I'll contact the on-call district attorney to get further instructions on what I needed to do because of his refusal for blood, but he did agree to go for a breath . . . [the ADA] advised me that if he was willing to give breath, to go ahead and take him for breath if I could find someplace with a machine and a

4

certified operator to do the breath draw . . . we brought [Defendant] outside and he actually said something to the effect of, I don't want to be a pain, I'm not trying to be difficult, let's go and do the blood. I stopped him and said, look, I contacted the ADA and they said if I can find somebody to give the breath test to you we can go ahead and do that. He actually thanked me for that and said on his own freewill and accord if I couldn't find someone for the breath test, then he would do the blood test for me. My exact words were, fair enough. (TT 68-69).

Officer Piraino contacted the Greensburg Police Department. That department informed him that they had an operator and a machine available to conduct a breath test. (TT 69). The officer and Defendant arrived at the Greensburg Police Department at 1:07 a.m. (TT 69). The officers placed him under constant supervision for 20 minutes. (TT 70). At some point, however, it was determined that the breath machine was not functioning and could not be fixed that evening. (TT 70). Officer Piraino again transported Defendant back to Westmoreland Hospital, where he consented to a blood draw. (TT 69-70). They arrived back at the hospital at 1:38 p.m., 2 hours and 16 minutes after the officer initiated the traffic stop. (TT 71). Officer Piraino testified that he did not observe Defendant drinking alcohol during the time between the traffic stop at the chemical test. (TT 73). The parties stipulated the blood test reflected a B.A.C. of .115%.

Defendant testified that he had problems with his artificial foot "most of the time." (TT 99). When Officer Pariano asked him for a blood test, Defendant stated that he requested a breath test, as he did not like needles. (TT 100). Defendant also testified that Officer Piriano told him that he had to submit to chemical testing, and that if he did not, he would be going to jail. (TT 100). Specifically, Defendant testified: "I do not remember

5

the specifics but [he told me] I would go to jail if I didn't take the test. I said I wanted the breath test." (TT 100). Moreover, Defendant testified that the officer wanted him to sign a form stating that he was responsible for paying for a blood test. He stated that he signed the form in protest, and at that point, the officer pulled him out of the room and told him he was transporting him to the Greensburg Police Station for a breath test. (TT 101).

After the breath test machine failed to function correctly, he testified that the officer "said will you take a blood test now. I said I had no choice." (TT 102). Defendant stated that prior to driving that night, he had drank two beers. (TT 102). He stated that prior to the traffic stop:

> What happened is I had just passed Hamill Medical and an animal ran in front of my car and I swerved and went off the road. I had the radio on while I was driving and when I swerved off the road the undercarriage of the car hit. I turned the radio off and I heard a humming sound. I said, great, I screwed up the car. I pulled over, turned off the lights, and put the car in park and I didn't hear the humming sound anymore. I thought, okay, it must be a rotational noise from the wheel. I leaned forward, put the car in gear, started going to the road and listened to see if I could hear it. I didn't hear the noise. Then I turned my lights back on and that's when I heard it was the bearing in the alternator. I started driving down the road and that's when the officer came up behind me, put on his lights and siren.
> (TT 103).

Defendant now avers that the evidence presented at the non-jury trial was insufficient to convict him; in the alternative, he states that it was against the weight of the evidence. He also states that the Court erred in its credibility determination when it credited Officer Piraino over Defendant where: "Officer Pariano failed in his duty under

6

75 Pa.C.S.A. 1547(b)(2)(ii) to inform [Defendant] of the increased penalties associated with a refusal" and where "Officer Piraino failed to have [Defendant] complete the Penndot form DL-26."

Defendant also avers that "no evidence exists in the record" that Defendant ever drove recklessly. He continues that the Court erred in admitting scientific evidence of field sobriety testing, and in admitting Defendant's B.A.C. where it was taken more than two hours after driving. He states that even if the officer met the requirements of 75 Pa.C.S.A. §3802(g), the statute is unconstitutional.

## II.   ANALYSIS:

### A. WHETHER THERE WAS SUFFICIENT EVIDENCE WAS TO CONVICT DEFENDANT OF DUI AND/OR RECKLESS DRIVING?

First, Defendant alleges that there was insufficient evidence to convict him of driving under the influence of alcohol and reckless driving. In reviewing a sufficiency of the evidence claim, a court must:

> [D]etermine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
> *Comm. v. Feliciano*, 67 A.3d 19, 23-24 (Pa.Super.2013).

Further, the evidence presented at trial need not preclude every possibility of innocence. The Superior Court in Feliciano established that:

7

> [T]he fact-finder is free to believe all, part, or none of the evidence presented . . . The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. Additionally, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.
> *Id.*

Defendant was convicted of one count of 75 Pa.C.S.A. §3802(a)(1) (DUI, general impairment). An individual commits this offense where he or she drives, operates, or is in actual control of the movement of a vehicle "after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle."

Defendant was also convicted of one count of 75 Pa.C.S.A. §3802(b) (DUI, high rate of alcohol). An individual commits this offense where he or she drives, operates or is in actual physical control of the movement of a vehicle "after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven."

Section 3802(c)'s requirement to take the defendant's blood test within two hours after the individual has driven is subject to a "good cause" exception within section 3802(g), which provides:

> Notwithstanding the provisions of subsection ... (c) ... where alcohol or controlled substance concentration in an individual's blood or breath is an element of the offense, evidence of such alcohol or controlled substance concentration more than two hours after the individual has driven, operated or been in actual physical control of the

8

movement of the vehicle is sufficient to establish that element of the offense under the following circumstances: (1) where the Commonwealth shows good cause explaining why the chemical test sample could not be obtained within two hours; and (2) where the Commonwealth establishes that the individual did not imbibe any alcohol or utilize a controlled substance between the time the individual was arrested and the time the sample was obtained.

75 Pa.C.S. § 3802(g).

When the blood test does not take place within two hours after a defendant drives, operates or is in actual physical control of the vehicle, test results are subject to suppression unless Commonwealth proves good cause for the delay in obtaining a blood test and the defendant did not imbibe alcohol between his arrest and his blood test. 75 Pa.C.S. § 3802(g).

There is ample evidence in the record to show that Defendant was under the influence of alcohol and incapable of safe driving. At trial, Officer Piraino testified that Defendant was driving his vehicle at night without headlights for a substantial period of time, and that he was traveling in the opposing lane of traffic for at least 100 feet. When Officer Piraino requested Defendant's license, registration, and insurance information, he instead handed the officer a sticker indicating when his vehicle next required an oil change. He observed Defendant to have bloodshot eyes, and noticed the odor of alcohol emanating from his person. Upon asking Defendant to step out of his vehicle, he noted that Defendant could not walk in straight line to his patrol vehicle. He could not complete either the walk and turn test, or the one-leg stand.

Sufficient evidence was also presented to establish that Defendant's B.A.C. was between 0.10% and 0.16% within two hours after driving. It was established at trial that

9

the blood test was not completed until approximately 2 hours and 15 minutes after the initial traffic stop. The Commonwealth, however, established that good cause existed for the delay. Officer Piraino testified that upon transporting Defendant to Westmoreland Hospital, Defendant expressed his desire for a breath test instead of a blood test. As his local station did not have a breathalyzer or a certified operator, he traveled to the Greensburg Police Station, where an officer there had informed him that the station had both. After completing the legally-required 20-minute observation period, the officer was told that the breathalyzer machine was not functioning properly.[1] At that point, Defendant stated he would voluntarily submit to a blood test.

Officer Piraino also testified that he did not observe Defendant drinking alcohol during the time between the traffic stop at the chemical test. As the officer made every attempt to accommodate Defendant and ensure that the test was entirely of his own accord, resulting in a blood test that was performed shortly after the 2-hour mark, the Court determined that the Commonwealth sufficiently established good cause for the delay. Also, Defendant's assertion that Section 3802(g) is unconstitutional is wholly without a scintilla of merit or support.

The Commonwealth also introduced sufficient evidence for the offense of reckless driving. An individual drives recklessly where he or she "drives any vehicle in willful or wanton disregard for the safety of persons or property." 75 Pa.C.S.A. §3736. A person

---

[1] Sergeant Donald Sarsfield of the Greensburg Police Department also testified at trial that "when [Officer Piraino] arrived I went to start up the instrument and it just showed it needed an accuracy test, it wasn't prepared to do a breath test, so I advised him that we were not going to be able to do that" (TT 21). As a certified operator of the machine, he ably explained to the Court the mechanisms of the machine, and why it was not functioning properly. (TT 22-23).

10

acts recklessly if he or she "consciously disregards a substantial and unjustifiable risk" of injury to others. 18 Pa.C.S.A. §302(b)(3).

Defendant is correct that driving under the influence does not establish recklessness *per se*, for purposes of offense of reckless driving; there must be other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury that is consciously disregarded. 18 Pa.C.S.A. § 302(b)(3); 75 Pa.C.S.A. § 3736(a). In this case, Defendant's actions created a created a substantial risk of injury in that he drove, without headlights, at approximately 11:30 p.m., in the wrong direction for a substantial period of time. Although Defendant informed Officer Piraino that driving in the wrong lane was "no big deal," he created a substantial risk for a traffic accident and resulting injuries by making himself invisible to any driver traveling in the correct lane of travel. For these reasons, there was sufficient evidence to support Defendant's conviction for reckless driving.

## B. WHETHER DEFENDANT'S CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE?

In his second issue, Defendant challenges the weight of the evidence. This argument is waived. "A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Comm. v. Thompson*, 93 A.3d 478, 490 (Pa.Super. 2014) In this case, Defendant did not file a post-sentence motion or a written motion prior to sentencing. Moreover, Defendant did not preserve the issue orally prior to sentencing. Accordingly, Defendant has waived this challenge.

11

## C. WHETHER OFFICER PIRAINO FAILED IN HIS DUTY TO READ DEFENDANT HIS DL-26 WARNINGS OR INFORM HIM OF INCREASED PENALTIES FOR REFUSING A BLOOD/BREATH TEST?

Defendant next avers that Officer Piraino had a duty to read Defendant DL-26 warnings prior to asking him to consent to chemical testing. Section 1547 does not require a police officer to read the law to a suspect in every case before the officer requests chemical testing. Rather, the section only requires the officer to inform the suspect of the consequences if the individual refuses to submit to the testing. Thus, if an individual does not consent, their operating privileges cannot be revoked if the aforementioned warnings have not been read. Thus, this argument is meritless.

## D. WHETHER THE COURT ERRED IN ADMITTING SCIENTIFIC EVIDENCE OF FIELD SOBRIETY TESTING?

Defendant next challenges the admission of evidence related to field sobriety testing. He asserts that field sobriety testing is not scientific because "drunk people are uncoordinated" and the science has never been peer reviewed. This argument is also wholly without merit. It is well-established that a defendant's performance during field sobriety tests is reflective of the ordinary signs of intoxication discernible by a layperson. *Comm. v. Ragan*, 652 A.2d 925 (Pa.Super. 1995). As Officer Piraino observed Defendant's actions, he could render an opinion as to whether appellant was intoxicated. *Id.* Defendant similarly argues against the use of the horizontal gaze nystagmus test; however, the results of this test were never admitted into evidence at trial, and were not considered by the Court. Moreover, even if such results were suppressed or

12

the tests never performed, Officer Piraino possessed probable cause to arrest Defendant based on a plethora of evidence relating to signs of intoxication.

For the reasons discussed, *supra*, this Court's judgment of sentence was not in error.

**BY THE COURT:**

Rita Donovan Hathaway, President Judge

**ATTEST:**

Clerk of Courts

c.c.    File
Adam Barr, Esq., District Attorney's Office
David Colecchia, Esq., Counsel for Defendant
Pamela Neiderhiser, Esq., Court Administrator's Office